SCHWAMB, Plaintiff in error, v. STATE, Defendant in error.

*No. State 107. Argued January 9, 1970.—Decided February 6, 1970.*
(Also reported in 173 N. W. 2d 666.)

6

For the plaintiff in error there was a brief and oral argument by *L. William Staudenmaier* of Milwaukee.

For the defendant in error the cause was argued by *Michael Ash,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HEFFERNAN, J.   Various errors committed by the trial court are alleged in the briefs and were discussed at oral argument.  They relate primarily to the contention that confessions were improperly admitted and that such confessions were highly prejudicial to the defendant's

cause. Basic to defendant's argument in this court is that the two counsel who represented him at trial were incompetent, that proper objections were not made, and that, had objections either been urged or urged more forcefully, the trial judge would have desisted from admitting the questioned confessions and avoided committing what is now denominated as error.

We should state at the outset that, by the failure either to make objections or the appropriate motions for a new trial following the verdict, the defendant is precluded from raising such errors in this court. We pointed out in *State v. Van Beek* (1966), 31 Wis. 2d 51, 141 N. W. 2d 873, that we would not review the evidence in a case where there was a failure to move for a new trial or to set aside the verdict on the ground of insufficient evidence. Such rationale has been consistently followed by this court. In *Finger v. State* (1968), 40 Wis. 2d 103, 161 N. W. 2d 272, we extended the rule of *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 80 N. W. 2d 380. We pointed out that a similar rule applies in criminal jury cases. The discussion of the same problem in *Jonas v. Northeastern Mut. Fire Ins. Co.* (1969), 44 Wis. 2d 347, 171 N. W. 2d 185, made it clear that the rule was applicable to all claimed error and was not limited to questions of sufficiency of the evidence. In *Jonas,* page 351, we made applicable the *Wells* rule:

". . . that, where there was a trial to a jury, no error of the court 'should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial.' *Wells, supra,* page 518."

It is apparent that in the instant case none of the errors now alleged are reviewable as a matter of right. We nevertheless conclude, in view of the allegation of incompetency of counsel, that it is appropriate for this

court to review the contention that incompetency of counsel necessitates a new trial in the interest of justice. As a consequence, the facts elicited at trial have been set forth *in extenso*.

In *Commodore v. State* (1967), 33 Wis. 2d 373, 383, 147 N. W. 2d 283, we summarized the holdings of this court in regard to the invocation of our discretionary power to reverse the conviction of a trial court and to order a new trial in the interest of justice pursuant to sec. 251.09, Stats. Therein we said:

"This power is exercised with 'some reluctance and with great caution' and only in the event of a probable miscarriage of justice. *Ferry v. State* (1954), 266 Wis. 508, 511, 63 N. W. (2d) 741. Such grave doubt must exist regarding a defendant's guilt to induce the belief that justice has miscarried. *State v. Fricke* (1934), 215 Wis. 661, 667, 255 N. W. 724. In *Lock v. State* (1966), 31 Wis. (2d) 110, 118, 142 N. W. (2d) 183, we stated:
" 'In order for this court to exercise its discretion and for such a probability [of a miscarriage of justice] to exist we would at least have to be convinced that the defendant should not have been found guilty and that justice demands the defendant be given another trial.' "

In *Commodore* we also indicated, for there to be a new trial on this ground, that there must be evidence to indicate that a different result would be obtained under optimum circumstances. *Commodore, supra,* page 383.

Applying these tests, we decline to exercise our discretionary powers. A reading of the evidence summarized above and a careful perusal of the transcript makes it clear that the defendant's guilt was overwhelming. There were numerous eyewitnesses to the shooting and witnesses to the defendant's prior statement that he intended to kill Phyllis. It is difficult to conceive of any theory under which this case might have been tried that probably would have resulted in a verdict of other than first-degree murder.

Defense counsel produced a psychiatrist in an attempt to show that the defendant was not legally responsible for his acts at the time the crime occurred, but the testimony was uniform that the defendant was not insane —that he knew right from wrong and the nature and quality of his acts. It is urged now that defense counsel should have asked for a "bifurcated" trial. This was prior to the mandate in *State ex rel. La Follette v. Raskin* (1967), 34 Wis. 2d 607, 150 N. W. 2d 318, permitting a sequential order of proof with respect to the issues of guilt and insanity upon a showing that the medical examination pursuant to sec. 957.27, Stats., elicited inculpatory statements within the protection of the fifth amendment to the United States Constitution. Moreover, it is difficult to see, where the defense of insanity proved to be most insubstantial and no inculpatory statements of the kind discussed in *State ex rel. La Follette v. Raskin* were elicited, that a different mode of trial would have in any way provided the defendant with greater rights.

The voluntariness of the confessions was determined in a separate *Goodchild* proceeding, as has been heretofore directed by this court. *State ex rel. Goodchild v. Burke* (1965), 27 Wis. 2d 244, 133 N. W. 2d 753. A review of the testimony elicited in that hearing shows that the judge's findings that the confessions were voluntary are not contrary to the great weight and clear preponderance of the evidence.

It is also apparent that certain objections to the confessions that were raised in the *Goodchild* hearing were not raised when the confessions were brought before the jury. This we believe, reflects the strategy of trial counsel and the defendant—to display an attitude of cooperativeness and contrition. In the direct examination of the defendant, Schwamb stated that he told the police everything they asked, that he did not attempt to conceal anything from the police concerning the kill-

ing, and he made no attempt to conceal anything from the judge or jury. There was no attempt to contradict the confessions or to impeach either their voluntariness or trustworthiness. The strategy was obviously one of cooperation with the court and the prosecution because the state's case made it most unlikely that the defendant could prevail upon the merits. Had there been a lesser charge than first-degree murder, the overwhelming nature of the prosecution's case might well have resulted in a guilty plea, but under the circumstances, where a life sentence is mandatory, either following a trial or plea on a charge of first-degree murder, defense counsel preferred to take his chances, slim though they were, on a possible second-degree verdict or an acquittal by virtue of the finding of insanity.

Looking at the record as a whole, we cannot conclude that the defense afforded by counsel was unreasonable. We have stated that the test of effective representation by counsel "is whether the representation was so inadequate as to amount to no counsel at all and to reduce the trial to a sham and a mockery of justice." *Flowers v. State* (1969), 43 Wis. 2d 352, 365, 168 N. W. 2d 843. *See also State v. Willing* (1968), 39 Wis. 2d 408, 413, 159 N. W. 2d 15; *Kaczmarek v. State* (1968), 38 Wis. 2d 71, 84, 155 N. W. 2d 813; *State v. Cathey* (1966), 32 Wis. 2d 79, 86, 87, 145 N. W. 2d 100; *Eskra v. State* (1965), 29 Wis. 2d 212, 223, 138 N. W. 2d 173; *Pulaski v. State* (1964), 23 Wis. 2d 138, 148, 126 N. W. 2d 625.

We see no evidence that counsels' conduct in this case in any way approximated this minimum standard. Defendant's counsel made a valiant effort to convince the court and jury that their client should be exonerated from the legal responsibility for his admitted act. Counsel not only presented what psychiatric evidence that was available but also attempted, by persistent questioning, to prove that persons who knew the defendant were of the

opinion that he was not himself on the evening of the killing—that he was crazed or intoxicated—and that he lacked a felonious intent. This tack at least rendered possible a defense to first-degree murder by setting up facts which if believed could have led to a finding of guilty only in the second degree. The judge, because of this testimony, appropriately submitted a verdict of second-degree murder.

It is nevertheless now contended on this appeal that the entire course of conduct by defense counsel, particularly in regard to the hearing on voluntariness, was such as to show a lack of ingenuity or real comprehension.

We are mindful of the problem that confronts an able, conscientious, and experienced counsel, as we have on this appeal, whom this court appoints to prosecute an appeal. We expect a vigorous assertion of defendant's rights, and in the event of trial error or the rare case of incompetency of counsel, such errors should be presented in this court. We do not appoint counsel to "whitewash" the conduct of trial counsel or the trial court.

If, however, in the honest judgment of counsel, appointed for appeal, the proposed appeal is frivolous and wholly without merit, a "no-merit" report pursuant to *Anders v. California* (1967), 386 U. S. 738, 87 Sup. Ct. 1396, 18 L. Ed. 2d 493, should be filed; and in the event this court agrees with the conclusions therein, counsel will be discharged and none afforded at the expense of the state.

In most cases it is easy, by hindsight, to fault trial counsel and to conclude on review that had different tactics been used a more favorable result would have been obtained. We cannot, however, say that such was the case here. No doubt, some trial counsel would have made far more obstreperous objection and persisted in pettifogging tactics, which would have delayed the course of trial without affecting the outcome, and without accomplishing the legitimate objectives of trial objections

—that of assuring that due process is afforded and that a conviction is obtained only after a fair trial.

Much of the content of the confessions admitted into evidence was exculpatory in nature, and even that which was inculpatory cannot be said to have affected the verdict of the jury. Even though all the confessions that are now objected to were excluded, there was overwhelming evidence that the defendant performed the very act with which he was charged, and that prior thereto, in the presence of witnesses, he stated he intended to kill Phyllis. As to these crucial facts there is no dispute.

We do not overlook the rule of law, stated in *Payne v. Arkansas* (1958), 356 U. S. 560, 78 Sup. Ct. 844, 2 L. Ed. 2d 975, and *Chapman v. California* (1967), 386 U. S. 18, 87 Sup. Ct. 824, 17 L. Ed. 2d 705, and followed in *McKinley v. State* (1967), 37 Wis. 2d 26, 154 N. W. 2d 344, holding that the admission of a coerced confession cannot be deemed harmless error even in the presence of other evidence which might well have constituted independent proof of guilt beyond a reasonable doubt. The line of United States cases upon which *McKinley* rests is, however, immaterial herein, since sufficient weight of evidence was adduced at the *Goodchild* hearing to make a finding of voluntariness.

We weigh the evidence independent of the confessions only to the extent that such proof is relevant to the exercise of this court's discretion under sec. 251.09, Stats., and is probative of our conclusion that justice did not miscarry.

A review of the record shows that the confessions were, in terms of proof, mere surplusage and could not be denominated even as sew-up confessions. They were highly redundant in the framework of the basic independent proof presented by the state.[1]

---

[1] It should be noted in passing that the trial herein predated the ruling of *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694, and hence the *Miranda* warnings were not required.

Viewing this case from the vantage point of hindsight, we conclude that trial counsel most realistically appraised their client's position and worked to the utmost to secure an acquittal on first-degree murder and a verdict finding him guilty on a lesser charge. Nor do we conclude that the failure to make what are now deemed appropriate post-trial motions is indicative of incompetency. While it is important in a proper case, where prejudicial error has occurred or where the interest of justice has not been served, to make the requisite motions for a new trial, we hardly consider that either the cause of justice or the cause of the defendant is served by making pointless and time-consuming motions. It is the theory of our criminal law that the purpose of a criminal conviction is not merely to "punish" the guilty but to protect society from antisocial individuals during their period of rehabilitation. It is considered that the welfare of the defendant himself and of society is served by the expectation of rehabilitation in a corrective institution. This is considered by many to be the chief justification for our criminal process (*see* Menninger, *The Crime of Punishment*). To make futile motions would merely stay the commencement of the rehabilitative process. We see no evidence that in this case the defendant requested or insisted upon any post-trial motions. Had defendant done so, he of course would have been within his legally afforded rights, but the fact that none were *initiated* by trial counsel is more to the credit of trial counsel than evidence of incompetency.

While we commend lawyers who vigorously protect their clients from prejudice and trial error, we also commend those who recognize the finality of a conviction and realize that it is in the interests of their clients and of society to put further criminal litigation at rest. We have no fault to find with trial counsel in this case, and we are satisfied that the interest of justice would not be served by a new trial.

*By the Court.*—Judgment affirmed.