STATE, Respondent, v. KOIS, Appellant.

*Nos. State 69, 70. Argued February 5, 1971.—Decided June 29, 1971.*
(Also reported in 188 N. W. 2d 467.)

670

For the appellant there was a brief by *Shellow & Shellow* and *Robert H. Friebert,* all of Milwaukee, and oral argument by *Mr. Friebert.*

For the respondent the cause was argued by *Jon Peter Genrich,* assistant district attorney of Milwaukee county, with whom on the brief were *Robert W. Warren,* attorney general, and *E. Michael McCann,* district attorney.

HALLOWS, C. J.    These are the first cases in which this court has considered alleged obscene material in a newspaper under sec. 944.21 (1) (a), Stats.,[1] which makes it illegal to publish obscene material.

The pictures accompanying the news article depict a man and woman on a bed having intercourse in a sitting position. The accompanying news story states the Milwaukee police department had arrested a Kaleidoscope photographer for possession of similar pictures but not the identical pictures shown. The Sex Poem consists of a one-line string of words curving and wandering through poetry on two pages of the newspaper. The Sex Poem describes in detail the physical and emotional impact during intercourse from the standpoint of the participating male.

At the trial the state called only one witness, a police officer who offered both testimonial and circumstantial evidence of the identity of Kois, as the publisher, and of venue. The two issues of Kaleidoscope were admitted as autoptical evidence and the state rested. A motion for dismissal was denied.

---

[1] "944.21 **Lewd, obscene or indecent matter, pictures and performances.** (1) Whoever intentionally does any of the following may be fined not more than $5,000 or imprisoned not more than 5 years or both:

"(a) Imports, prints, advertises, sells, has in his possession for sale, or publishes, exhibits, or transfers commercially any lewd, obscene or indecent written matter, picture, sound recording, or film."

The defense presented several witnesses, a professor of English, an art teacher, a lecturer in the department of journalism, an associate professor of art from the University of Wisconsin in Milwaukee, and a person who testified he purchased a magazine in the Milwaukee county courthouse on the morning of the trial which contained pictures of unclad males and females. The professor of English testified that Sex Poem did not violate community standards and was not obscene in her opinion and that the newspaper had social value. The art educator testified that photography was a recognized form of art and the photographs did not go beyond the customary limits of candor in the representation of sex. The lecturer in journalism testified the articles in the two newspapers had redeeming social value. The associate professor of art testified photography was an art form, the pictures depicted a classical art theme and in his opinion were innocuous and inane.

The trial court concluded it was not bound by this evidence and pointed out deficiencies and the inconclusiveness in the alleged expert testimony. The court considered it was competent as the finder of the facts to determine whether the material was constitutionally obscene and held that it was, inferring that neither the pictures nor the poem had any redeeming social value. The court also held the issue of Kaleidoscope as a whole in which the pictures and poem appeared were obscene.

Kois, in his initial argument, contends the evidence is insufficient to support the finding of guilty: (1) Because it was not proved he was the publisher of Kaleidoscope and the material involved was published in Milwaukee county, and (2) there was a failure of proof because the state introduced no testimony in respect to obscenity, community standards or social value. We think the evidence is sufficient to show the defendant was the publisher of Kaleidoscope and the newspaper was published in Milwaukee county. The evidence on the

issue of obscenity is not insufficient as a matter of law because there was no expert testimony on obscenity. This argument that obscenity can only be proved by expert testimony was rejected recently by this court in the case of *State v. Amato* (1971), 49 Wis. 2d 638, 183 N. W. 2d 29. While in some cases the admissibility of expert testimony on the standards defining constitutional obscenity may be helpful and while an ultimate opinion of an expert on obscenity is admissible in Wisconsin, there is no reason why obscenity or pornography can only be proved by expert testimony. *See: The Use of Expert Testimony in Obscenity Litigation,* Whyte, 1965 Wis. L. Rev. 113. To require expert testimony would overlook the value of real or autoptical evidence and would lead in most cases to a battle of so-called experts.

Obscenity is not such an elusive concept that it takes expert witnesses to tell a jury or a judge what is the dominant theme of the material, what is the community standard, or what is the social value, or that a trial judge or an appellate court cannot find it as a matter of law or under the *Roth-Memoirs* test.[2] These elements are not separate and independent tests but need only to coalesce to constitute the constitutional sense of obscenity.

It is claimed the trial court shifted the burden of proof to the defense because the trial court did not require expert testimony and undertook to determine the question of obscenity itself. We find no merit in this argument. This is another phase of the argument on insufficiency of the evidence.

Kois argues the complaint was insufficient and the evidence adduced at the preliminary hearing was insufficient to support findings of probable cause. This argument rests on the same foundation as his unmeritorious argument of the insufficiency of the evidence at trial.

[2] *Roth v. United States* (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498; *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 86 Sup. Ct. 975, 16 L. Ed. 2d 1; *Ginsberg v. New York* (1968), 390 U. S. 629, 88 Sup. Ct. 1274, 20 L. Ed. 2d 195.

In addition, he argues that since the threat of his criminal prosecution has a chilling effect to keep alleged obscene literature from being distributed, an adversary hearing should be had prior to the issuance of the warrant for arrest. What Kois is asking for is an adversary trial in a criminal obscenity case before a person is arrested on probable cause. We find no merit in this argument nor in the proposition that a person cannot be arrested for publishing obscene material until after such material has been found obscene in an *in rem* proceeding under sec. 269.565, Stats.

The basic issue in this case is whether the court employed the proper test of obscenity and whether the material in Kaleidoscope is obscene. Kois argues the trial court did not make any finding in regard to social value and therefore employed an improper test of obscenity. We think it is clear from the record the trial court did consider the social value of the material and found or indicated in its opinion the material had no social value.

While the test of obscenity for constitutional purposes is in a state of flux, this court has followed what has appeared to be from time to time the majority or the plurality view of the Supreme Court of the United States. Whether we are required to or not, this court has accepted the *Roth* test as modified by *Memoirs* and as expounded in *Ginsberg v. New York, supra.*[3] Since these cases, we must now recognize *Stanley v. Georgia* (1969), 394 U. S. 557, 89 Sup. Ct. 1243, 22 L. Ed. 2d 542.

Four cases have come before this court since *Roth* repudiated the old *Hicklin*[4] test and the obscenity cases began to flood state and national courts. In *State v. Chobot* (1960), 12 Wis. 2d 110, 106 N. W. 2d 286, we affirmed a conviction for selling obscene material in viola-

[3] *See* footnote 2.
[4] *Regina v. Hicklin* (1868), L. R. 3 Q. B. 360.

tion of sec. 944.21 (1) (a), Stats. (the same question involved in this case) on the basis of *Roth* and its holding the obscenity was not within the protection of the speech and press freedoms of the first amendment. Thus we furnished the meaning to our statute and held the words "lewd, obscene or indecent" as used in the section were not unconstitutionally indefinite. In *McCauley v. Tropic of Cancer* (1963), 20 Wis. 2d 134, 121 N. W. 2d 545, our declaratory judgment statute, sec. 269.565, providing for an *in rem* adjudication of obscenity material was applied to the book *Tropic of Cancer*. This section was upheld on the basis the *Roth* test defined the language of the statute. We pointed out that in applying the *Roth* test a balancing of factors was necessarily implied, especially the factor of redeeming social value, and pointed out that sec. 269.565 also contemplated such balancing of factors because sec. 269.565 provided for the admissibility of evidence relating to the literary, cultural, or educational character of the material as well as providing that the dominant effect of the material as a whole should be determinative.

In *State v. Voshart* (1968), 39 Wis. 2d 419, 159 N. W. 2d 1, we again reviewed the supreme court cases on obscenity and stated that when, under the *Roth-Memoirs* test, the three elements coalesce and you had such an identifiable obscenity, the state could constitutionally suppress it by either civil or criminal sanctions. We also recognized the test of "hard core pornography." *See Mishkin v. New York* (1966), 383 U. S. 502, 86 Sup. Ct. 958, 16 L. Ed. 2d 56. This test is the equivalent of saying the material is obscene as a matter of law or per se because it means "something that most judges and others will 'know . . . when [they] see it.'" *See* HARLAN'S dissent in *Memoirs v. Massachusetts, supra,* at 457; STEWART'S concurrence in *Jacobellis v. Ohio* (1964), 378 U. S. 184, 197, 84 Sup. Ct. 1676, 12 L. Ed. 2d 793; *also*

*Morris v. United States* (D. C. 1969), 259 Atl. 2d 337, 341.

In *Voshart,* in considering the constitutionality of our contraband statute, sec. 963.04 (5), this court held the obscene material could be destroyed even though it came into the possession of the government by way of an illegal search. Although *Stanley v. Georgia, supra,* which was decided after *Voshart,* has limited the application of the *Roth-Memoirs* test by carving out the privacy of one's home from criminal sanction for possession of obscene material, *Stanley* did not touch our holding in *Voshart* that a state may declare obscene matter to be contraband and subject to forfeiture as against an individual's claim to a right of property therein. *Stanley* did no more than the facts indicate, *i.e.,* recognize the right of privacy under the guise of freedom of speech. *Stanley* expressly stated *"Roth* and the cases following that decision are not impaired by today's holding." 394 U. S. 557, at 568.[5] *See also: Gable v. Jenkins* (1970), 397 U. S. 592, 90 Sup. Ct. 1351, 25 L. Ed. 2d 595. We do not agree with the argument that because *Stanley* permits possession by an adult of obscene material in the privacy of his home it necessarily or implicitly follows that such a person has a constitutional right to obtain such obscene material or that others have a right to publish, sell, or distribute such material to him.

In another recent obscenity case, *State v. Amato, supra,* we affirmed convictions for the sale of obscene

---

[5] Since this case was argued, the United States Supreme Court decided *United States v. Reidel* (1971), 402 U. S. 351, 91 Sup. Ct. 1410, 28 L. Ed. 2d 813, and *United States v. Thirty-Seven Photographs* (1971), 402 U. S. 363, 91 Sup. Ct. 1400, 28 L. Ed. 2d 822. *Reidel* holds there need be no constitutionally protected means (Mail) for commercial distributors to get obscene material to one protected by *Stanley. Thirty-Seven Photographs* held *Stanley* was no help to a traveler carrying obscene material through customs which he intended to distribute commercially.

magazines and addressed ourselves to the question of whether the *Roth-Memoirs* test had been modified. We pointed out that *Ginzburg v. United States* (1966), 383 U. S. 463, 86 Sup. Ct. 942, 16 L. Ed. 2d 31, added a theory that in a close case the evidence of pandering and the method of distribution was relevant to the determination of the dominant purpose of the material and might be controlling or sufficient to tip the scales in favor of obscenity. In *Amato* we also pointed out that *Redrup v. New York* (1967), 386 U. S. 767, 87 Sup. Ct. 1414, 18 L. Ed. 2d 515, did not limit the use or scope of the *Roth-Memoir* test. Material can still be obscene although it is not sold to minors, is not so obtrusively displayed as to cause unwilling viewers to see it, or is not pandered.

In considering the pictures and poem in Kaleidoscope now before this court, we apply the *Roth-Memoirs* test [6] and determine: (1) What constitutes a community in respect to a local newspaper, and (2) what constitutes "the material as a whole" in respect to a newspaper. Neither of these issues has been determined by the United States Supreme Court, and therefore this court is free to put its own interpretation upon these parts of the test. We use the contemporary community standards prevalent in the state of Wisconsin. We indicated that was proper in the *Tropic of Cancer*. It may be that for violations of federal postal laws a national test should be used. But since the obscenity crime in society is based upon the protection of public morals and not private morals and the state has the primary responsibility to protect public morals, vice laws are a legitimate means

---

[6] That test requires a showing that:

". . . (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." *Memoirs v. Massachusetts* (1966), 383 U. S. 413, 418, 86 Sup. Ct. 975, 16 L. Ed. 2d 1.

of the state to that end. We so held in *State v. Voshart,* *supra,* at 435.

While it is argued the community standard should be a national one, we find little merit in such an argument because of the impossibility of determining in a criminal sanction what may well be nonexistent. The smaller the area, the easier it is for a standard to exist and to be ascertained. For the violation of a state criminal law, there is no need to go outside the state to determine what the standard is. Here, we are dealing with a local newspaper, published and of limited circulation in this state.

This is the first case involving a newspaper as distinguished from a movie, book, or other media of distribution of obscene material. The material taken as a whole cannot and should not encompass the entire newspaper but should be restricted to that part which is naturally associated in continuity and unity of thought with the alleged obscene matter. A novel or a movie is a unified whole, a complete story, which has unity and coherence of thought and purpose. Its dominant theme can be determined. But a newspaper's primary function is to disseminate news and is composed of many separate items such as world news, sport news, society news, features, comics, want ads, and advertising. There is no individualistic dominant theme of each issue of a newspaper. While the newspaper generally has some general professional characteristics and may have an editorial policy, its content does not coalesce as material does in a novel to produce a dominant theme. A newspaper may be read in parts, from front to back, or from back to front—it makes no difference. Just as the pages or sections of a newspaper can be physically separated without damage to the whole, for contemporaneous reading by various members of the family—so can it be separated to determine obscenity. Consequently, the whole newspaper, whether it is a bulky Sunday edition, a daily, or a weekly, need not be considered as a whole.

The matter taken as a whole in respect to newspapers must mean only material which is necessarily associated with the alleged offensive item and gives it meaning or a necessary setting. However, what is obscene cannot be made not obscene by surrounding it with an immunizing blanket of irrelevant nonobscenity matter. This court considers the pictures should be considered in connection with the accompanying news article and the poem should be viewed alone but in its setting on the page. Both are held to be constitutionally obscene and some members of the court would call the material hard core pornography.

Kois argues the poem portrays religious implications of the sex act and there is symbolism in the fact the act occurs at dawn and because of this the poem has redeeming social value. To our way of thinking, the poem does not have the attributes ascribed to it. It describes the sex act in detail and the minute description of the emotional and sensual involvement has no justification other than to appeal to prurient interest in sex. We believe the poem affronts the contemporary community standards of this state for poetry dealing with sex, if indeed it is poetry. It may be that in the opinion of the witness the poem is not obscene, but we are certain a vast majority of people in Wisconsin would be shocked upon reading the poem and would condemn its publication. Contemporary community standards cannot be determined merely by the avant-garde nor by the conservative rear guard. If a community standard means community, the standard must bear some rational relationship to what the majority of the people think and accept as normal.

In respect to the two photographs entitled "$100,000 Photographs" which portray the act of intercourse in a sitting position on a bed, it is argued that they have social value because the persons are artistically posed, photography is an art, and because the accompanying news

article is a criticism of police and court methods dealing with cases involving obscene material. We consider the news article to be an unjustifiable prop for the pictures. The pictures are not the ones involved in the story and the article is a lame excuse for their publication. The story is just as effective as news without the pictures. Why the pictures are designated $100,000 Photos, other than to attract attention to them, is not disclosed.

There may be legitimate questions of what constitutes redeeming social value. Proponents of obscenity argue everything has some social value—to them, even obscenity has social importance and value. But it seems to us a society which is preoccupied with sex, natural and perverted, and whose peoples' emotional needs demand sex in all its forms is as sick as the Biblical cities of Sodom and Gomorrah were before their fall.

This court finds both the poem and the pictures to be utterly without any redeeming social value or any social value which would justify their publication under contemporary community standards in Wisconsin. The material taken as a whole, as we define it, appeals to prurient interest in sex and is offensive and affronts current community standards of Wisconsin relating to the representation of sexual matters and exploiting as it does the act of intercourse goes far beyond the candor which is accepted in such matters.

*By the Court.*—Judgment and order affirmed.

WILKIE, J. (*concurring in part; dissenting in part*). In my concurring opinion in *Court v. State,* issued today, I have emphasized that in obscenity cases it is our inescapable obligation as an appellate court to make an independent determination of the question of obscenity in each case, a question of constitutional fact. Applying that scope of review here and on the basis of the proper test of obscenity as stated in that opinion, in my view (1) the poem that is the subject of one charge is obscene,

and (2) the photograph and accompanying news article are not.

HEFFERNAN, J. (*dissenting in part*). I must respectfully disagree in part with the factual conclusions reached by the majority. The writer of that opinion states that photographs "accompanying the news article depict a man and woman on a bed having intercourse in a sitting position." This is sheer speculation. The trial judge made no such finding, and I was unable to find the testimony of any witness that the photographs portrayed the act of sexual intercourse. Accordingly, it must be concluded that the majority reaches its conclusion as a matter of judicial notice. I cannot conclude on the basis of any experience common to all mankind that the attitude assumed by the persons depicted is that of intercourse. It does not so impress me, and I am unable to so facilely denominate the conduct as the majority opinion has done. If it is necessary to label the type of conduct depicted, it would be appropriate to leave that determination to the finder of fact and not to the speculative musing of appellate judges.

More important, however, than this regrettable judicial lapse into unsupported fact finding is the inexplicable conclusion that the article is merely a prop to justify obscene pictures. The record is clear that a photograph was seized by the Milwaukee police, and a vice squad officer suggested the bail for the possessor might be $100,000. The statement in the majority opinion, "Why the pictures are designated $100,000 Photos . . . is not disclosed," is simply contrary to the plain meaning of the news article. It is equally clear that the two pictures printed are similar to the one seized. The majority opinion suggests that, had the original picture been printed, a legitimate news and free-speech purpose would have been served. Clearly that was impossible. The original picture was in the custody of law enforcement officials. The

publication of the news item and pictures was an attempt to demonstrate that the vice squad officer had acted unreasonably in suggesting the amount of bail. This is the very type of speech and expression that is protected by the first amendment. It is the expression of a political and social point of view critical of governmental conduct —a right which must be given primacy even though in so doing we permit the expression of ideas contrary to the norm and the publication of pictures that are offensive.[1]

The Kaleidoscope message is clear. The police seized a picture very similar to the one depicted (this is not disputed). A bail figure of $100,000 was suggested. The article takes the point of view that such suggestion was absurd and oppressive. We need not agree with the Kaleidoscope thesis (the record shows that, in fact, the bail was $100, not the suggested $100,000), to conclude that the point of view is an expression of a political and social criticism of the very kind that is protected by the first amendment. While I do not see what appears to be so clear to the majority, one thing is clear —a fair perusal of the article and photographs makes it apparent that the article is not a mere prop or excuse to print dirty pictures. The article and the photographs are inextricably connected and must be considered together. Under no accepted legal standard, as the facts appear in this record, can the photographs and article legally be held obscene.

---

[1] "The right to freely criticize government and those who administer its affairs is a hallmark of our free and democratic republic. Our commitment is to full and free debate and discussion, not to repression, direct or indirect." Dissenting opinion of Mr. Justice ROBERT W. HANSEN in *Dalton v. Meister* (1971), 52 Wis. 2d 173, 188 N. W. 2d 494.