STATE, Respondent, v. SIMPSON, Appellant.

*Nos. State 44, 46. Argued September 11, 1972.—Decided October 31, 1972.*
(Also reported in 201 N. W. 2d 558.)

31]

For the appellant there was a brief by *Shellow & Shellow* and *James A. Walrath,* all of Milwaukee, and oral argument by *Mr. Walrath.*

For the respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

WILKIE, J. Appellant raises several issues on this appeal:

1. Did the criminal complaints state essential facts which would lead a reasonable man to conclude that there was probable cause that a crime had been committed and that defendant had probably committed it?

2. Was the state required to identify the nature of the "intended and probable recipient group" to which these magazines were directed and adduce evidence of the nature of that group at trial?

3. Was the introduction of the magazines into evidence, without further evidence, sufficient to prove their obscenity beyond a reasonable doubt?

4. Did the trial court properly instruct the jury?

5. Are these publications not obscene as a matter of law?

1. *Did the criminal complaints state essential facts which would lead a reasonable man to conclude that there was probable cause that a crime had been committed and that defendant had probably committed it?*

Appellant makes numerous specific objections to the three criminal complaints here. The *Heads Up* and *Flip Flop* complaints read identically as follows:

"This complainant has read and examined all of these magazines named and found them to predominantly depict photographs of male and female nudes and semi-

nudes in provocative and seductive positions with their genitalia area exposed most clearly. The central and dominant theme of the magazine is the exposure of the genitalia area. The magazine has no literary or social value. That other magazines familiar to this complainant containing similar photographs predominantly throughout the magazines were determined to be obscene by circuit court juries within the last year."

Each complaint further states that defendant:

". . . did feloniously and intentionally sell obscene or indecent magazines, to-wit: one (1) publication entitled, 'Heads Up,' ['Flip Flop,'] contrary to section 944.21 (1) (a) of the Wisconsin Criminal Code."

With respect to the third complaint involving the magazines entitled *Wild-Cats* and *Jaybird Scene,* the complaint also asserts that:

"These said magazines are marked Exhibits 1 and 2 and made a part of this complaint. These said magazines and other similar magazines were in open view to the seller, Errol J. Simpson, and the public."

*Sufficient facts stated in complaints.*

Whether a complaint contains sufficient allegations of fact has been stated many times by this court to be whether the allegations of fact made in the complaint are sufficient for "a fair-minded magistrate [to] conclude that the facts and circumstances alleged justify further criminal proceedings and that the charges are not merely capricious." [1] "Minimal adequacy" in a commonsense evaluation has been suggested as the determinative question.[2]

---

[1] *State ex rel. Cullen v. Ceci* (1970), 45 Wis. 2d 432, 444, 173 N. W. 2d 175, citing *Jaben v. United States* (1965), 381 U. S. 214, 85 Sup. Ct. 1365, 14 L. Ed. 2d 345.

[2] *State ex rel. Evanow v. Seraphim* (1968), 40 Wis. 2d 223, 226, 161 N. W. 2d 369.

Although the complaint itself must charge facts sufficient to give rise to reasonable inferences that probable cause exists,[3] all of the underlying circumstances need not appear in the complaint.[4] In the instant situation, the three complaints meet the minimal standard. Complainant includes factual data along with his ultimate conclusion of obscenity. He states the pictures are of nudes and seminudes with the genitalia area most clearly exposed. He suggests this to be the dominant theme of the magazines and states that in his estimation they have no literary or social value. Although the third complaint adopted the commendable practice of attaching actual copies of the alleged obscene magazines, there is no requirement that alleged obscene literature be attached to a complaint in order to render it sufficient.

### Police officer's description not inadequate.

Appellant objects to much of the police officer's language in the complaint as being "conclusory" descriptions concerning the magazines' alleged obscenity. Although the officer's statement that the magazines are similar to others personally known to him to have been found obscene by juries during the past year is not controlling upon the magistrate, this statement served as a common reference point regarding the type of magazines and assisted the magistrate in his probable-cause determination.

In *Court v. State*,[5] a quite similar obscenity case tried in Outagamie county in 1969 and decided by this court on appeal in 1971, this court held individual verbalizations or verbalized descriptions of obscene material are inherently defective. The context of this statement makes it clear that this court was substantiating its refusal to

---

[3] *Id.*

[4] *State ex rel. White v. Simpson* (1965), 28 Wis. 2d 590, 595, 137 N. W. 2d 391.

[5] (1971), 51 Wis. 2d 683, 690, 188 N. W. 2d 475.

be bound by decisions in other jurisdictions wherein magazines of similar verbal descriptions were found to be not obscene. This language in no way intended to strike down every descriptive statement by a complainant, describing literature which he considers obscene.

### Police officer complainant's qualifications established.

Appellant argues that the complaint is defective because the complainant's qualifications to express an opinion on obscenity are not established in the complaint. He cites *State ex rel. Pflanz v. County Court* [6] as requiring such statement of qualifications in the complaint. *Pflanz*, however, involved a highly technical area—income tax fraud. In the area of obscenity this court has repeatedly refused to acknowledge the necessity of expertise. [7] The *Giordenello Case* relied upon by defendant is also distinguishable. The complaint in a heroin possession conviction stated "[defendant] did receive . . . heroin." [8] There were no facts stated by the complainant alleging personal knowledge or any indication of the source of his belief that the substance was heroin. The supreme court held there to be insufficient facts stated to ground a finding of probable cause. *Giordenello* is not on point as herein complainant did state the source of his belief and that such source was known to him to be reliable. In light of this court's refusal to regard expert testimony essential to an obscenity determination, a police detective is undoubtedly as versed in prurient interests, community standards and literary or social values as any other nonexpert.

[6] (1967), 36 Wis. 2d 550, 559, 153 N. W. 2d 559. The *Pflanz Case* has also been confined to its peculiar factual context in *State ex rel. Evanow v. Seraphim, supra,* footnote 2, at page 227.

[7] *State v. Amato* (1971), 49 Wis. 2d 638, 183 N. W. 2d 29. *See also: State v. Kois* (1971), 51 Wis. 2d 668, 188 N. W. 2d 467.

[8] *Giordenello v. United States* (1958), 357 U. S. 480, 481, 78 Sup. Ct. 1245, 2 L. Ed. 2d 1503.

34

*Complaints need not include all elements of obscenity.*

The elements of obscenity have been repeatedly defined by this court as follows:

" '(a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.' " [9]

Appellant contends that there is no reference to or facts stated upon which an inference relating to prurient appeal or contemporary community standards can be drawn. On this point we find the reasoning in the case of *United States v. Luros* [10] persuasive. There the court held that an indictment for distributing allegedly obscene materials through the mail was not insufficient because it did not recite each of the elements of obscenity. The court stated "[a] charge that books and magazines are obscene necessarily refers to and incorporates the legal definition of obscenity." [11] Analogous are sufficiency-of-the-complaint cases in this state wherein it has been held unnecessary to allege expressly and precisely scienter when "feloniously and intentionally" have been included. [12]

*Described magazines are not, as a matter of law,*
*"Not Obscene."*

Appellant argues that these magazines cannot be found obscene because only nudity is depicted and not sexual

[9] *Court v. State, supra,* footnote 5, at page 691.
[10] (D. C. Iowa 1965), 243 Fed. Supp. 160; reversed on other grounds, *Luros v. United States* (8th Cir. 1968), 389 Fed. 2d 200, certiorari denied, 382 U. S. 956, 86 Sup. Ct. 433, 15 L. Ed. 2d 361.
[11] *Id.* at page 166.
[12] *E.g., Court v. State, supra,* footnote 5, at page 700.

activity. Given nonobscenity for nonsexuality, argues appellant, these complaints are not sufficient because they do not allege obscene depictions of sexual activity. Supportive of his proposition, appellant asserts, are several *"Redrup* reversals" and certain language in *State v. Amato,*[13] which is suggestive of the necessity of sexual activity. The *Amato* language in no way requires sexual activity for an obscenity determination. By stating "[w]e think the magazines here involved are more than a collection of photographs of nude men and women which suggest sexual activity,"[14] this court was merely differentiating the magazines under consideration from certain magazines contained in cases cited by the defendant therein.

This court in *Court v. State*[15] resoundingly rejected the contention therein presented that this court is bound by the decisions in other courts regarding whether similar magazines are obscene or not:

". . . The subjective nature of the material as well as the subjective conduct of the respective defendants requires an individual analysis in each case. . . ."

Defendant's argument that the *"Redrup* reversals" cited to this court make these magazines not obscene as a matter of law is, therefore, erroneous. In *State v. I, A Woman—Part II,*[16] this court held there to be reasonable cause to believe a film is obscene where reasonable men could differ. To argue, as does appellant, that these magazines are not obscene as a matter of law is to argue that reasonable men could not differ in finding nonobscenity where sexual activity is not portrayed. We disagree with this assertion.

[13] *Supra,* footnote 7.
[14] *Id.* at page 642.
[15] *Supra,* footnote 5, at page 690.
[16] (1971), 53 Wis. 2d 102, 110, 191 N. W. 2d 897.

*Not required in these complaints to identify particular
group intended or likely to receive magazines.*

Appellant argues that each of the complaints is deficient because it does not identify the particular recipient group to which the material is directed. There is no such requirement unless it is contended that the alleged obscene materials appealed to the prurient interest of a specially identified recipient group. The case of *Mishkin v. New York* [17] is cited by the appellant in support of his contention that the state failed to give proper notice to him as to the nature of the "intended and probable recipient group" by which the magazines were to be assessed. In *Mishkin,* the United States Supreme Court stated:

"*Where the material is designed for* and primarily disseminated to a clearly defined deviant sexual group, *rather than the public at large,* the prurient-appeal requirement of the *Roth* test is satisfied if the dominant theme of the material taken as a whole appeals to the prurient interest in sex of the members of that group." (Emphasis supplied.) [18]

In short, *Mishkin* does not require such identification of an intended and probable recipient group except where it is a clearly identified deviant group. This "deviant group" concept of *Mishkin* has been uniformly interpreted as an exception to the *Roth* prurient-appeal test. Thus, in *United States v. Ewing,* [19] cited by appellant, the Tenth Circuit Court of Appeals stated:

". . . The teachings of *Roth* and *Mishkin* merely require the government to demonstrate *in such cases* (1) that the materials are designed to show a degree of sexual arousal or interest on the part of the deviant and (2) that when such interest is evaluated by the jury, it

[17] (1966), 383 U. S. 502, 86 Sup. Ct. 958, 16 L. Ed. 2d 56.
[18] *Id.* at page 508.
[19] (10th Cir. 1971), 445 Fed. 2d 945.

is found by them to be shameful and morbid, after applying the standards of the national community as a whole." (Emphasis supplied.) [20]

A recent Maryland Court of Appeals case has similarly interpreted the *Mishkin* statement as an exception rather than the general rule.

". . . There was no evidence in this case to indicate that, under *Mishkin*, it was 'designed for or primarily disseminated to a clearly-defined deviant sexual group.' We must, therefore, measure prurience in terms of its appeal to the average person." [21]

Appellant cites *United States v. Klaw* [22] in support of his position. *Klaw* does, in dicta, state that proof of prurient stimulation and response is important—especially important where "there are characters and cults to which exaggerated high heels, black patent leather bindings and bondage poses have some occult significance." [23] The entire thrust of the *Klaw* decision, however, deals with the "bondage genre" and not the average man.

We conclude that where there is no such deviant group involved, the prurient appeal must be judged by the average man and according to his standard. The complaints here were not insufficient in failing to notify the appellant of the intended and probable recipient group, since no clearly defined deviant sexual group was involved.

*Complaints adequately allege element of scienter.*

The three complaints all state that the defendant did "feloniously and intentionally sell obscene or indecent magazines." This court considered similar language in

[20] *Id.* at pages 947, 948.
[21] *Woodruff v. State* (1971), 11 Md. App. 202, 216, 217, 273 Atl. 2d 436.
[22] (2d Cir. 1965), 350 Fed. 2d 155.
[23] *Id.* at page 166.

the *Court* complaint and approved that language as follows:

"... The phrase, 'feloniously and intentionally,' used in the complaint, under the statutory definition, constitutes a sufficient allegation of an element of scienter. The complaint was not insufficient." [24]

Appellant attempts to distinguish the cases upon the basis of factual dissimilarities. Thus, for example, he notes that in *Court* several further considerations such as the books being stapled shut, the "21 only" sign on the door, and the like, were mentioned. The *Court* decision, however, when it mentioned these facts as persuasive on the scienter issue, was discussing the concept of probable cause at the *preliminary hearing*, not at the complaint stage of a criminal prosecution.

2. *Was the state required to identify the nature of the "intended and probable recipient group" to which these magazines were directed and adduce evidence of the nature of that group at trial?*

Since the state was not obliged to give notice to the appellant as to the nature of the "intended and probable recipient group" it follows that at the trial the state did not need to adduce any evidence as to the nature of that group.

3. *Was the introduction of the magazines into evidence, without further evidence, sufficient to prove their obscenity beyond a reasonable doubt?*

This court has repeatedly held that obscenity is not so elusive a concept as to require expert testimony.[25] There is nothing here that warrants any further consideration of that question and the evidence, in the form of the magazines themselves, was clearly sufficient to prove obscenity beyond a reasonable doubt.

[24] *Court v. State, supra,* footnote 5, at page 688.

[25] *State v. Amato, supra,* footnote 7; *Court v. State, supra,* footnote 5; *State v. Kois, supra,* footnote 7.

4. *Did the trial court properly instruct the jury?*

As previously noted, this case was tried in the same court and by the same presiding judge as was *Court*. The trial court's instructions, attacked here by the appellant, are identical to those approved by this court in *Court v. State*.

### *Definitions of obscenity.*

The appellant acknowledges that the jury instruction given here has been previously approved by this court in *Court v. State*.[26] Notwithstanding this approval, appellant urges this court to adopt the position propounded in *Memoirs v. Massachusetts*,[27] which held:

". . . A book cannot be proscribed unless it is found to be *utterly* without redeeming social value. This is so even though the book is found to possess the requisite prurient appeal and to be patently offensive. Each of the three federal constitutional criteria is to be applied independently; *the social value of the book can neither be weighed against nor canceled by its prurient appeal or patent offensiveness.*" (Emphasis appellant's.)

The appellant also contends that the trial court erred because it proffered three separate and distinct definitions of obscenity to the jury. In addition to the standard *Roth* definition of obscenity, the record indicates that the trial court gave the following *alternative* definitions of obscenity:

"Obscenity has also been defined as signifying that form of morality which has relation to sexual impurity

---

[26] *Supra,* footnote 5, at page 702. " 'Material that describes or represents sex in various forms is not obscene if its social or literary values or importance outweighs the prurient or the offensive aspects of it. If the quality of the material has a significant and overbearing social or literary value it may not be found to be obscene merely because it offends community standards or appeals to prurient interests.' "

[27] (1966), 383 U. S. 413, 419, 86 Sup. Ct. 975, 16 L. Ed. 2d 1.

and which has a tendency to incite lustful thoughts. It also has been defined as material which has a substantial tendency to deprave or corrupt its readers or viewers by inciting lascivious thoughts or arousing lustful desires.

"An alternative definition of obscenity, in terms of hard-core pornography, has been given as material which focuses predominantly upon what is sexual, morbid, grossly perverse and bizarre without any artistic or scientific purpose or justification. . . ."

It should be noted that the first alternative definition proffered by the trial court is identical to the alternative instruction which was approved in *Court v. State.*[28] As was pointed out in *Court,* this alternative instruction is taken from *Roth's* companion case, *Alberts v. California.*[29] This court noted that while this alternative instruction did not encompass all of the *Roth* elements, "they are set forth explicitly elsewhere in the instructions, and the jury could not have been misled or the defendant prejudiced by the fact that the single sentence referred to did not encompass all of the elements."[30] This court further pointed out in the *Court* decision that the jury instructions "taken as a whole make it clear that the jury was to be bound by the *Roth* test . . . ."[31]

Perusal of this record adequately indicates that the trial court made it unequivocally clear to the jury that they were bound to the three *Roth* elements in order to find obscenity.

### Scienter.

As to the element of scienter, the trial court instructed the jury as follows:

[28] *Supra,* footnote 5, at page 701.

[29] (1957), 354 U. S. 476, 77 Sup. Ct. 1304, 1 L. Ed. 2d 1498.

[30] *Court v. State, supra,* footnote 5, at pages 701, 702.

[31] *Id.* at page 703.

■

"Before the defendant may be found guilty of selling any obscene material the state must prove, by evidence which satisfies you beyond a reasonable doubt, that the defendant did intentionally sell obscene magazines and that the magazines here in evidence were lewd, obscene or indecent."

Appellant argues that this instruction is inadequate and that such error is reversible within *Screws v. United States*.[32] Although substantially the same contention was made in *Court*, this court rejected the contention, stating:

". . . The majority of this court concludes that the interpretation that a reasonable jury would place upon this instruction would be that the word, 'intentionally,' as used therein carries with it the connotation that the defendant be required to have knowledge of those facts necessary to make his conduct criminal." [33]

### *No failure of court to notify defense of instruction to be given.*

Although the appellant contends that the defense was not informed, prior to closing argument, of the instruction which would be given, the record shows otherwise. The trial court and defense counsel minutely discussed the appellant's and the trial court's proposed instructions. The trial court indicated to defense counsel:

"I am going to follow substantially my instructions to which you raise the objections. If I find in the course of my review of them that something ought to be deleted or changed I will do it; otherwise they will be substantially the same."

The trial court should advise counsel what instructions will be given prior to their delivery and before jury

[32] (1945), 325 U. S. 91, 107, 65 Sup. Ct. 1031, 89 L. Ed. 1495.
[33] *Court v. State, supra,* footnote 5, at page 700.

argument.[34] Failure to do this must result in some actual harm or prejudice to the defendant in order for him to claim error.

The decision in *Wright v. United States* [35]—that the trial court's cryptic statement that it would give the "general instructions" was not sufficient—was grounded upon the fact that the defense counsel actually based his closing argument upon a theory of defense which the trial court rejected or ignored. There was actual prejudice to defendant's substantial rights. So also in *Ross v. United States*,[36] it was held that the refusal must appear to actually affect the content of counsel's closing argument.

Even if the trial court's response here to defense counsel's request was inadequate, and we do not consider it so to be, the record here fails to disclose any actual prejudice. Counsel for appellant argued along the lines of the *Roth* elements which were, in fact, what the court actually instructed upon.

### *Verdict.*

Appellant argues that the form of the verdict was misleading and constituted a directed verdict on the elements of obscenity and scienter. Appellant, however, did not object to the form of this verdict at the trial, nor did he request review of the form of the verdict on motion for a new trial. He has, therefore, waived this objection.[37]

---

[34] American Bar Association Project on Minimum Standards for Criminal Justice, *Standards Relating to Trial by Jury*, page 110, sec. 4.6(c), Approved Draft, 1968; 18 USCA Fed. Rules Cr. Proc., Rule 30.

[35] (9th Cir. 1964), 339 Fed. 2d 578.

[36] (6th Cir. 1950), 180 Fed. 2d 160.

[37] *Schwamb v. State* (1970), 46 Wis. 2d 1, 173 N. W. 2d 666; *State v. Van Beek* (1966), 31 Wis. 2d 51, 141 N. W. 2d 873.

5. *Are these publications not obscene as a matter of law?*

According to this court's majority holding in *Court v. State*,[38]

". . . The determination of obscenity is a factual matter to be resolved by a finder of fact following constitutional guidelines, subject to review by an appellate court which seeks to determine merely whether the evidence underpinning the verdict was sufficient in view of the record as a whole."

We are satisfied that the jury verdict here is supported by substantial evidence.

*By the Court.*—Judgments and orders affirmed.

WILKIE, J. (*concurring*). On matters of obscenity where constitutional fact questions are involved, it is my view that the decisions of the United States Supreme Court still require this court, making its appellate review of the trial court's determination herein, to make an independent determination of whether the magazines are obscene.[1]

Since this court decided *Court v. State*,[2] the United States Supreme Court reversed this court's obscenity ruling in *State v. Kois*,[3] and in so doing made an independent review of the trial court's determination of obscenity.

In my judgment, after making such an independent review here, there is no question but what each of the four magazines in question is obscene. Each is nothing more than a compilation of photographs of nudes and seminudes of both sexes with the genitalia area promi-

[38] *Supra*, footnote 5, at pages 697, 698.

[1] *See* my concurring opinion in *Court v. State* (1971), 51 Wis. 2d 683, 711, 188 N. W. 2d 475.

[2] *Supra*, footnote 1.

[3] (1971), 51 Wis. 2d 668, 188 N. W. 2d 467, reversed *sub nom. Kois v. Wisconsin* (1972), 408 U. S. 229, 92 Sup. Ct. 2245, 33 L. Ed. 2d 312. *See* 55 Wis. 2d 512.

nently displayed. The photographed persons are in provocative and seductive positions, so that their only appeal is to the prurient interests of the reader. The magazines make no pretense of having any literary or socially redeeming value. They offend the community standards whether considered locally or nationally.[4]

---

[4] *See* my concurring opinion in *Orito v. State* (1972), 55 Wis. 2d 161, 167, 168, 197 N. W. 2d 763.