Abraham J. Gellihoff, J.
Motions numbers 104,105,106 and 113 of July 26,1973 are consolidated for disposition.
In July, 1973, several Judges of the Criminal Cdurt of the City of New York personally viewed certain motion picture films, and, finding probable cause to believe them obscene, issued search warrants commanding seizure of a print of - each film. Criminal prosecution under article 235 of the Penal Law was commenced against the exhibitors of the films, and others. Pursuant to the recent decision of the Supreme Court of the United States in Heller v. New York (413 U. S. 483 [1973]), the seized films have been retained for evidence, but exhibition of the films continues.
The Corporation Counsel of the City 'of. New York and the District Attorney of New York County have brought actions, pursuant to CPLR 6330, for judgments permanently enjoining defendants from displaying the motion pictures involved, and for associated relief. These plaintiffs now apply to this court for injunctions during the pendency of the actions, restraining defendants from displaying the films. Defendants crossrmove for summary judgment dismissing the complaints.
It is important at the outset to clarify the issues that are presented by these motions — and particularly those that are not. For example, the issue whether regulating the publication of obscene material violates the constitutional right of “freedom of speech” (U. S. Const., First Amendment; N. Y. Const., art. I, § 8) is not involved. The Supreme Court of the United States has categorically stated that “ obscene material is unprotected by the First Amendment. Kois v. Wisconsin, 408 U. S. 229 [1972] ” (Miller v. California, 413 U. S. 15, 23 [1973]). So, also, the fact that pbscene material is exhibited *119 only to consenting adults, and is neither foisted on an unwilling public, nor permitted to be seen by minors, is no longer a factor for this court’s consideration. The Supreme Court stated, less than two months ago: “We categorically disapprove the theory * * * that obscene, pornographic films acquire constitutional immunity from state regulation simply because they are exhibited for consenting adults only ” (Paris Adult Theatre I v. Slaton, 413 U. S. 49, 57 [1973] ).
The sole issue presented by plaintiffs’ motions is whether, under currently existing New York law, this court should preliminarily enjoin the exhibition of the films. The sole issue presented by the cross motions is whether CPLR 6330 and section 235.00 of the Penal Law are constitutional.
CPLR 6330, in pertinent part, provides as follows:
“The supreme court -has jurisdiction to enjoin the sale or distribution of obscene prints and articles, as hereinafter specified:
“1. The district attorney of any county * * * or the corporation counsel * * * of any city * * * in which a person, firm or corporation publishes, sells or distributes or displays * * * any * * * motion picture * * * of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose; or in any other respect defined in section 235.00 of the penal law, may maintain an action for an injunction against such person, firm or corporation in the supreme court to prevent the sale * * * or the distribution * * * within the state of any * * * motion picture * * * of an indecent character, herein described or described in section 235.00 of the penal law.”
Defendants contend that CPLR 6330, and section 235.00 of the Penal Law, referred to therein, are unconstitutional because they are vague and overbroad.
It is the court’s duty to construe the statute where “‘a serious doubt of constitutionality is raised ’ ’ ’ and “‘a construction of the statute is fairly possible by which the question may be avoided. United States v. Thirty-Seven Photographs, 402 U. S. 363, 369 [1971] ’ ” (United States v. 12 200-Ft. Reels of Super 8 mm. Film, 413 U. S. 123, 130, n. 7 [1973]). Indeed, if at all possible, a statute is required to be construed in favor of its constitutionality (Mancuso v. Board of Educ. of Schenectady, *120 207 Misc. 703, 706 [Sup. Ct., Albany County, 1954], affd. 309 N. Y. 726 [1955]; see Matter of Bell v. Waterfront Comm., 20 N Y 2d 54 [1967]).
The Supreme Court of the United States has warned, however, that “ State statutes designed to regulate obscene materials must be carefully limited ” (Miller v. California, 413 U. S. 15, supra, p. 23). “As a result”, the court said, “We now confine the permissible scope of such regulation to works which depict op describe sexual conduct. That, conduct must be specifically defined by the applicable state law, as written or authoritatively construed. A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value ” (413 U. S. 15, supra, p. 24).
Defendants contend that CPLR 6330 fails to ‘ ‘ specifically define ’ ’ the sexual conduct, the depiction of which CPLR 6330 regulates. Indeed, on its face, the statute is vague, since it does not at all define the sexual conduct, the depiction of which it is aimed at. What CPLR 6330 does is to empower this court to enjoin the distribution of “ any * * * motion picture * * * of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting ’ ’. These words may hardly be said to relate only to sexual conduct, and, even if they do, that conduct is not “ specifically defined ”.
In this regard, the Supreme Court has suggested to the State Legislatures how to draft legislation against obscenity which will meet constitutional standards. Thus, after stating that one of the guidelines for the trier of fact must be
“ (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, ’ ’ the court continued:
“We emphasize that it is not our function to propose regulatory schemes for the States. That must await their concrete legislative efforts. It is possible, however, to give a few plain examples of what a state statute could define for regulation under part (b) of the standard announced in this opinion, supra:
“ (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.
“ (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals ” (Miller v. California, 413 U. S. 15, supra, pp. 24, 25 [emphasis added]).
*121 In an endeavor to preserve the constitutionality of Federal obscenity statutes, the Supreme Court stated that “ If and when such a1 serious doubt ’ is raised as to the vagueness of the words ‘ obscene,’ ‘ lewd,’ ‘ lascivious,’ ‘ filthy,’ ‘ indecent,’ or 1 immoral ’ as used to describe regulated material in 19 U. S. C. § 1305(a) and 18 U. S. C. § 1462 * * * we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific ‘ hard-core ’ sexual conduct given as examples in Miller v. California ’’. (United States v. 12 200-Ft. Reels of Super 8 mm. Film, 413 U. S. 123, supra, p. 130; n. 7.)
This court will place the same construction upon the similar language contained in CPLR 6330. Accordingly, the words “obscene, lewd, lascivious, filthy, indecent or disgusting” as contained in CPLR 6330 are construed as limiting ‘ ‘ the regulated material” to “ (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated ”, and “ (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals ”. As so here construed and limited, the language of CPLR 6330 may be held to specifically define the sexual conduct the depiction of which in a motion picture is subject to regulation.
However, nothing in the words “ obscene, lewd, lascivious, filthy, indecent or disgusting ” as used in CPLR 6330, nor anything else .stated in that statute, limits the application of the statute to works which “ taken as a whole, do not have serious literary, artistic, political, or scientific value ’ ’, and the statute contains no words or other language which the court can. so construe. While the courts may interpret statutory language so as to preserve its validity, the court may not add to the statute language which is wholly absent (see Hamar Theatres v. Cryan [U. S. D. C. N. J., 1973]; Meltzer v. Koenigsberg, 302 N. Y. 523, 525 [1951]).
CPLR 6330, therefore, permits prohibition of material which, albeit “ obscene, lewd, lascivious, filthy, indecent or disgusting ”, as herein construed, nevertheless contains “ serious literary, artistic, political, or scientific value ”. Such everbroad regulation of expression is beyond the constitutionally permissible scope of regulation, even of material which is obscene.
In describing the regulated material, CPLR 6330, after using the words “ which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or *122 immoral use or purpose ”, adds the clause, “or in any other respect defined in section 235.00 óf the penal law ’ ’. This clause is incomprehensible, as well as ungrammatical. However, toward the end of subdivision 1 of CPLR 6330, the statute provides that plaintiffs may maintain an action for an injunction to prevent the publication of material “of an indecent character, herein described or described in section 235.00 of the penal law ”. CPLR 6330, therefore, seems to incorporate therein the definition of “ obscene ” contained in section 235.00.
Section 235.00, as here pertinent, provides:
‘ ‘ Obscenity; definitions of terms.—
The following definitions are applicable * * *.
“ 1. ‘ Obscene.’ Any material or performance is ‘ obscene ’ if (a) considered as a whole, its predominant appeal is to a prurient, shameful or morbid interest in nudity, sex, excretion, sadism or masochism, and (b) it goes substantially beyond customary limits of candor in describing or representing such matters, and (c) it is utterly without redeeming social value.”
All that this definition does is to characterise the “ material ” or “ performance ” it labels as obscene; its appeal is ..to prurient interest in nudity, sex, excretion, sadism or masochism; it goes beyond customary limits of candor in describing such matters; it is utterly without redeeming social value. The section talks about describing sex but not about describing sexual conduct. The Supreme Court has held that the permissible scope of a State’s regulation is confined to “ works which depict or describe sexual conduct. ’ ’ More than that, the Supreme Court has mandated that such sexual conduct “ must be specifically defined by the applicable state law”. Such specific definition may be written in the statute, or the .statute may be authoritatively construed as containing such specific, definition. (Miller v. California, 413 U. S. 15, supra, p. 24.)
Even if this court were to construe section 235.00 as limited to works which depict or describe sexual conduct, that conduct would still remain undefined in the section itself. And, unlike the words “ obscene, lewd, lascivious, filthy, indecent or disgusting ” in CPLR 6330, the words of section 235.00 are not susceptible of being construed as “ representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated ”, and “ representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals ” (Miller v. California, supra). For, while the court may construe undefined terms, where there exists a “ serious doubt ” as to their vagueness, section 235.00 leaves no doubt as to its *123 meaning; it means what it says, .and what it says makes no attempt to specifically define the sexual conduct which, when depicted in material or a performance, should he considered obscene.
Indeed, the Legislature has precluded the court from altering by construction the definition of the word “ obscene For section 235.00, at its very outset, provides that the language thereof shall itself constitute the definition of “ obscene ” (see Hamar Theatres v. Cryan, supra; Lawrence Constr. Corp. v. State of New York, 293 N. Y. 634, 639 [1944]).
Besides, paragraph (b) of subdivision 1 of section 235.00 regulates any material which “ goes substantially beyond customary limits of candor in describing ’ ’ nudity, sex, excretion, sadism or masochism. What goes beyond customary limits of candor in describing nudity, sex, excretion, sadism or masochism is not equivalent to “ patently offensive ” representation of “ ultimate sexual acts”.
It is not surprising that this court is compelled to conclude that section 235.00 exceeds the permissible limits on State regulation of obscene material. Three Justices of the Supreme Court of the United States opined that the recent Supreme Court rulings would “invalidate virtually every state law” (Paris Adult Theatre I v. Slaton, 413 U. S. 49, supra, p. 95, n. 13 [Brennan, J. dissenting]), and the majority of the court, although declining to agree, referred to only two State statutes as examples of laws containing sufficient specific definition— those of Oregon and Hawaii. The court omitted reference to. the New York obscenity statute, although that statute was then before the court in a related matter (see Miller v. California, 413 U. S. 15, supra, p. 24, n. 6; Heller v. New York, supra).
The court, has viewed the four films which are the subject of these motions — “High Bise”, “Behind the Green Door”, “The Innocent Abroad” and “ The Newcomers”. No purpose would be served by describing the minimal plots of these films, nor by detailing the sexual conduct depicted. Each of the films portrays vaginal, anal and oral intercourse, by groups, and by heterosexual and lesbian couples. The sexual conduct portrayed is actual and explicit, with genitals prominently displayed, and with many scenes concluding with external ejaculation. Whether the word “ obscene ” is used as traditionally defined in the English language, or in accordance with the specific judicial meaning (see Miller v. California, 413 U. S. 15, supra, p. 18, n. 2), the films are, in this court’s view, obscene. In the court’s personal opinion, they are patently offensive.
*124 However, the Supreme Court has determined that “ obscenity is to be determined by applying ‘ contemporary community standards’ * * * not ‘ national standards’” (Miller v. California, 413 U. S. 15, supra, p. 37).
Formerly, a court could determine national standards, based in part on prior trials of similar cases, and could judge a film merely on its content. But this is the first case of its kind since the Supreme Court decreed that community standards, not national standards, govern, and there is no evidence before the court, at this stage of1 2the case, to enable the court to gauge the contemporary standards of this community. While the court knows its own standards, and believes it knows what the community standards should be, there are no facts presented before the court to enable it to say, with reasonable assurance, in advance of a full trial, what the trier of the facts will find the community standards actually to be.
Defendants’ cross motions are granted and the complaints are dismissed on the ground that CPLR 6330 is overbroad in its provisions and, therefore, unconstitutional as violative of the First and Fourteenth Amendments to the Constitution of the United States. Accordingly, and for the other reasons hereinabove stated, plaintiffs’ motions are denied.
The Corporation Counsel and the District Attorney of New York County are commended for their helpful advocacy and zeal. However, the unequivocal rulings of the Supreme Court of the United States impel the conclusions herein reached.