**UNITED STATES of America, Plaintiff,**

v.

**Alvin GOLDSTEIN, James Buckley, Milky Way Productions, Inc., Defendants.**

**Crim. A. No. 74–185–CR6.**

United States District Court, D. Kansas.

June 16, 1976.

Lawrence E. Schauf, Asst. U. S. Atty., Wichita, Kan., Harold Damelin, U. S. Justice Dept., Washington, D. C., for plaintiff.

Herald Price Fahringer, Paul J. Cambria, Jr., Buffalo, N. Y., for defendant Goldstein.

Arthur M. Schwartz, Denver, Colo., for Buckley.

James Lawing, Wichita, Kan., for Milky Way Productions.

## OPINION OF THE COURT AND ORDER STRIKING COUNT OF INDICTMENT

THEIS, District Judge.

Defendants in this criminal action have been charged in a thirteen-count indictment with conspiracy to mail and causing to be mailed non-mailable matter as defined and prohibited by 18 U.S.C. § 1461. The charge in issue, Count XIII, alleges defendants did knowingly cause to be delivered by mail an envelope containing a tabloid giving information, directly and indirectly, as to where, how, from whom, and by what means obscene, lewd, lascivious, indecent, filthy, and vile articles, matters and things, i. e., films entitled "Snake Fuckers—Color Climax Film Number 1276," and "Big Dick, Number Ten," might be obtained.

Portions of 18 U.S.C. § 1461 which are alleged to be violated in Count XIII of the Indictment against defendants are as follows:

"§ 1461. *Mailing obscene or crime-inciting matter.*

"Every obscene, lewd, lascivious, indecent, filthy or vile article, matter, thing, device or substance; and . . .

"Every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made, . . whether sealed or unsealed; . . .

"Is declared to be nonmailable matter and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

"Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section . . . to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, . . . shall be fined . . . or imprisoned . . . ."

Defendants have moved the Court for an order striking Count XIII of the indictment against them, alleging the un-

constitutionality of 18 U.S.C. § 1461 as applied to mailed matter which gives information where, or how, or from whom, or by what means an obscene article, etc., may be obtained. Defendants do not rest their allegation solely on grounds that a regulatory statute such as § 1461 should not constitutionally be applied to the facts as herein charged, but also assert the statute's facial overbreadth chills publication of unquestionably legitimate, constitutionally protected advertisements and reviews. While the facts alleged against defendants may appear to merit regulation, the Court finds the defendants have standing to attack overbreadth of the general section of 18 U.S.C. § 1461 here involved:

> "We give a defendant standing to challenge a statute on grounds that it is facially overbroad, regardless of whether his own conduct could be regulated by a more narrowly drawn statute, because of the 'danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application.'" *Bigelow v. Virginia,* 421 U.S. 809, 816, 95 S.Ct. 2222, 2230, 44 L.Ed.2d 600 (1975), citing *N.A.A. C.P. v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963).

Defendants, in argument to the Court, made various allegations as to the effect of this statute if it is constitutionally upheld. It was asserted a newspaper which is sent anywhere by mail could not run an advertisement stating where a movie or book dealing with sex, to any extent, could be seen or purchased for fear the movie or book would be challenged as obscene and the newspaper criminally charged for advertising such. Defendants further alleged this statute sets up a strict liability on the part of a newspaper running a movie or book advertisement, which must ultimately create self-censorship by the newspaper. Such self-censorship would restrict advertisement of constitutionally protected, as well as obscene publications and films. Finally, defendants asserted the statute is vague in that a publication reviewing a book or movie has no standards to foresee whether such may be ruled obscene in some communities to which the publication might be mailed and not in others.

The Supreme Court has ruled upon the constitutionality of the statute in question several times. See *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *Ginzburg v. United States,* 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966). Excepting the "vagueness" issue raised by defendants, however, the Supreme Court has not considered the specific questions raised in this case. Having studied defendants' contentions in relation to Supreme Court decisions interpreting § 1461 and decisions defining First Amendment rights held by newspapers and similar publications, the Court concludes certain of defendants' fears as to the effects of the statute upon the newspaper and magazine business in general to have merit.

■ Contrary to defendants' assertions, however, this statute does not create strict liability on the part of a newspaper running a movie or book advertisement. A newspaper distributed through the mails which merely accepts and runs an advertisement with no clear indicia of obscenity is in no danger of conviction under § 1461. The ruling in *Hamling* establishes scienter, or knowledge of the contents, character and nature of the materials charged as obscene, is necessary to a conviction under 18 U.S.C. § 1461. The *Hamling* opinion cites with approval *Manual Enterprises, Inc. v. Day,* 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962), wherein the Court considered whether scienter of advertised matter is required before one is liable for mailing in a publication an advertisement giving information where obscene matter may be purchased, and concluded proof of such scienter is required in civil as well as criminal prosecution under the statute.

■ Therefore, proof of knowledge by a newspaper or magazine as to the character and nature of materials advertised in it is required before a conviction under 18 U.S.C. § 1461 may be obtained. Such knowledge must be proven by more than merely "showing that a defendant did not

make a 'good faith effort' to ascertain the character of his advertiser's materials." *Manual Enterprises, Inc. v. Day*, supra, at 493, 82 S.Ct. at 1440. Indeed, the newspaper or magazine is under no overall obligation to investigate each of its advertisers. It has been recognized by the Supreme Court that such an expensive and unrealistic burden would entail self-censorship, and would enable the government to indirectly deprive constitutionally protected materials of "a legitimate and recognized avenue of access to the public." *Manual*, at 493, 82 S.Ct. at 1440. The Court, in *Smith v. California*, 361 U.S. 147, 153, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959), struck down as unconstitutional a related requirement that booksellers know the character and contents of all books in their stores, stating:

> "If the contents of bookshops and periodical stands were restricted to material of which their proprietors had made an inspection, they might be depleted indeed. The bookseller's limitation in the amount of reading material with which he could familiarize himself, and his timidity in the face of his absolute criminal liability, thus would tend to restrict the public's access to forms of the printed word which the State could not constitutionally suppress directly. The bookseller's self-censorship, compelled by the State, would be a censorship affecting the whole public, hardly less virulent for being privately administered."

To require knowledge of contents and character of movies or books not even in the possession of the newspaper publishing the advertisement would be even more onerous, and serve less purpose.

It appears, however, if an editor of a publication evidences requisite knowledge of the contents and character of a movie or book by writing a review of such; if the review also contains direct or indirect information as to where, how or from whom the book or movie may be obtained; and if the publication containing the review is sent through the mails, persons mailing that publication are subject to the same obscenity standard and criminal sanctions for the purposes of 18 U.S.C. § 1461 as if they had mailed the book or movie itself. Under the language of the statute this is true even though the content of the review itself is not obscene, and even if the review is entirely critical of the quality or value of such material. A serious question of constitutionality is raised by this example.

It is well known that the Supreme Court has ruled obscene matter is not within the protection afforded by the First Amendment of the Constitution. *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). It has also ruled the government has an interest in regulating advertisement or promotion of an act or product which is itself illegal. In *Pittsburgh Press Co. v. Human Relations Commission*, 413 U.S. 376, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973), the Court found because it is illegal for employers to hire on a sexually discriminatory basis, it is not violative of First Amendment rights to make unlawful newspaper want ads listing non-exempt employment in sex-designated columns, and stated at 389, 93 S.Ct. at 2561:

> "Any First Amendment interest which might be served by advertising an ordinary commercial proposal, and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity."

■ To some extent, therefore, the First Amendment permits regulation of advertising that is related to activities the State may legitimately regulate or even prohibit. See *Bigelow v. Virginia*, supra, 421 U.S. at 825, 95 S.Ct. 2222. *Bigelow* squarely establishes, at 861, 95 S.Ct. at 2234, the concept that:

> "Advertising, like all public expression, may be subject to reasonable regulation that serves a legitimate public interest. (citations deleted.) To the extent that commercial activity is subject to regulation, the relationship of speech to that activity may be one factor, among others, to be considered in weighing the First

Amendment interest against the governmental interest alleged. Advertising is not thereby stripped of all First Amendment protection. The relationship of speech to the marketplace of products or of services does not make it valueless in the marketplace of ideas."

The portion of 18 U.S.C. § 1461 here in question is clearly intended to prevent additional dissemination of obscenity through the mails by reason of mailed advertisements or articles, the intent of which is to sell a work on the basis of its prurient appeal. See *Ginzburg v. United States*, supra. As such, the statute promotes a valid governmental interest in preventing perpetration of an illegal act. The breadth of the statute, however, goes further in attempting to prevent mailing of any article giving information, directly or indirectly, as to where, how or from whom obscene material may be obtained, whether or not the intent of the article is to sell the material. This includes a valid book review in any mailed publication which conveys an opinion as to the material and incidentally gives some type of information by which a reader could himself locate and obtain the material. The coincidental inclusion of information having no pandering overtones from which a reader might independently solicit mailing of obscene matter within a mailed writing containing a lawful, protected expression of opinion is not sufficient to in itself deprive such writing of First Amendment protection for regulatory purposes. Further weighing of interests is required as set out in *Bigelow* at 826, 95 S.Ct. at 2235 as follows:

"Regardless of the particular label asserted by the State—whether it calls speech 'commercial' or 'commercial advertising' or 'solicitation'—a court may not escape the task of assessing the First Amendment interest at stake and weighing it against the public interest allegedly served by the regulation."

The prosecution of an editor of a newspaper, rather than the publisher of a book or movie judged obscene, incurs more serious

First Amendment overtones. *Bigelow*, at 828, 95 S.Ct. 2222.

The First Amendment interest at stake here involves the dangers of self-censorship inherent in requiring newspapers or magazines expressing an opinion upon a book or film concerning sex to do so at their peril. Valuable expressions of idea and opinion, either for or against a publication, would be suppressed because of an editor's fear the publication might be deemed obscene in some geographical area to which the review is mailed, or his fear of the expense of having to defend in court such material from which he is deriving no appreciable profit. Any review published in widely circulated newspapers or magazines would tend to steer "far wider of the unlawful zone," and expression of opinion as to non-obscene and obscene materials would be suppressed. See *New York Times Co. v. Sullivan*, 376 U.S. 254, 279, 84 S.Ct. 710, 725, 11 L.Ed.2d 686 (1964). Weighing the government's interest in having a citizenry ignorant of where obscene materials might be obtained, against the First Amendment interest at stake, the balance clearly falls in favor of First Amendment protection. As stated in *Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 1829, 48 L.Ed.2d 346 (1976):

"It is precisely this kind of choice, between the dangers of suppressing information, and the dangers of its misuse if it is freely available, that the First Amendment makes for us."

The Court's assessment in this matter is borne out by the closing language of the opinion in *Pittsburgh Press Co. v. Human Relations Commission*, supra, the case in which it was ruled constitutional to forbid sexually discriminatory job classifications in newspaper want ads, as follows:

"We emphasize that nothing in our holding allows government at any level to forbid Pittsburgh Press to publish and distribute advertisements commenting on the ordinance, the enforcement practices of the Commission, or the propriety of sex preferences in employment. Nor, a fortiori, does our decision authorize any

restriction whatever, whether of content or layout, on stories or commentary originated by Pittsburgh Press, its columnists, or its contributors. *On the contrary, we reaffirm unequivocally the protection afforded to editorial judgment and to the free expression of views on these and other issues, however controversial.* We hold only that the Commission's modified order, narrowly drawn to prohibit placement in sex-designated columns of advertisements for nonexempt job opportunities, does not infringe the First Amendment rights of Pittsburgh Press." *Pittsburgh Press Co. v. Human Relations Comm'n.*, supra, 413 U.S. at 391, 93 S.Ct. at 2561. See also *Kois v. Wisconsin*, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972). (Emphasis added.)

In the recent case of *Virginia Pharmacy Board v. Virginia Consumer Council*, supra, 425 U.S. at 764, 96 S.Ct. at 1827, the Court indicated that even if it had upheld the law making advertisement of prescription drugs illegal, "our pharmacist, for example, could cast himself as a commentator on store-to-store disparities in drug prices, giving his own and those of a competitor as proof. We see little point in requiring him to do so, and little difference if he does not." Therefore, even if certain advertisements are non-protected speech, editorial expressions of opinion containing therein information identical to that in the advertisement, are protected by the First Amendment.

A law expressly prohibiting editorial comment upon the merits of sexually discriminatory employment which directly or indirectly informs readers of employers who do unlawfully discriminate and the availability of jobs with such employers would obviously be unconstitutional. Likewise unconstitutional is a statute which prohibits comment, itself nonobscene, upon the merits of literary or artistic material deemed obscene by a community into which that opinion is mailed, simply because the opinion also gives information as to where such material may be obtained. Suppression of nonobscene, nonpandering expression of opinion is too great a social price for the dubious advantage of public ignorance as to where obscene materials may be obtained when the more direct proscription against mailing of obscene materials is itself available.

As stated in the *Virginia Pharmacy Board v. Virginia Consumer Council* opinion, supra, at 770, 96 S.Ct. at 1829, dealing with a similar weighing of regulatory versus First Amendment interests:

"There is, of course, an alternative to this highly paternalistic approach. That alternative is to assume that this information is not in itself harmful, that people will perceive their own best interests if only they are well informed, and that the best means to that end is to open the channels of communication rather than to close them."

In this instance, the alternative demanded by the First Amendment is to allow dissemination of opinion as to materials dealing with all subjects, including sex, even though such opinion reveals where such materials may be obtained. The overbreadth of 18 U.S.C. § 1461 can deter this dissemination of opinion through threat of criminal and economic sanctions almost as effectively as through actual application of such sanctions. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *N.A.A.C.P. v. Button*, supra, 371 U.S. at 433, 83 S.Ct. at 338 (citing *Cantwell v. Connecticut*, 310 U.S. 296, 311, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)).

For the above reasons, the Court finds the sections of 18 U.S.C. § 1461 declaring to be nonmailable matter "every written or printed card, letter, circular, book, pamphlet, advertisement, or notice of any kind giving information, directly or indirectly, where, or how, or from whom, or by what means any of such mentioned matters, articles, or things may be obtained or made," to be facially unconstitutional for overbreadth, *creating prior restraint of protected* editorial opinion and expression.

Therefore, Count XIII of the Indictment must be stricken.

IT IS SO ORDERED at Wichita, Kansas, this 16th day of June, 1976.