**NORMA KRISTIE, INC., an Arkansas Corporation, Plaintiff,**

v.

**The CITY OF OKLAHOMA CITY, a Municipal Corporation, Oklahoma City Public Property Authority, a Public Trust, and Scott Johnson, Defendants.**

**No. CIV 83–2059–R.**

United States District Court, W.D. Oklahoma.

Sept. 1, 1983.

Roland Tague, Groves, Bleakley & Tague, Oklahoma City, Okl., for plaintiff.

Diane L. Davis, Asst. Municipal Counselor, Oklahoma City, Okl., for defendants.

MEMORANDUM OPINION AND ORDER

DAVID L. RUSSELL, District Judge.

This cause came on for hearing on August 31, 1983, on Plaintiff's Motion for a Preliminary Injunction. By agreement of the parties, trial of the action on the merits was advanced and consolidated with the hearing on the Preliminary Injunction.

The following shall constitute the Court's findings of fact and conclusions of law.

Plaintiff is an Arkansas corporation with its principal place of business in Little Rock, Arkansas. Defendant Oklahoma City Public Property Authority (OCPPA) is a public trust organized and existing under and by virtue of the laws of the State of Oklahoma and is charged with, *inter alia,* management of the Myriad Convention Center (Myriad) in Oklahoma City. The Myriad is leased on a more or less regular basis for public and private use. Defendant Scott Johnson is the Manager of OCPPA and is also City Manager of the City of Oklahoma City. The City of Oklahoma City was dismissed as a party Defendant at the close of Plaintiff's evidence.

Plaintiff's president and sole stockholder is N.R. Jones. Jones testified that he visited in Oklahoma City in late June, 1983, and contacted officials of the Myriad to inquire about renting the facility. Jones wished to produce a national contest for female impersonators entitled the "Miss Gay America Pageant." The pageant is apparently an annual event which began in 1972. According to Jones contestants are not necessarily homosexual.

Jones stated to the Myriad officials the purpose of the production and his requirements for the production. The official with whom he talked suggested the Great Hall of the Myriad. Jones and the official inspected the Great Hall and the rental was tentatively reserved for September 18, 1983.

Jones contacted a Mr. Zeigler, the booking agent for the Myriad four to five days later and was assured that he would be able to book the Great Hall and a contract would be mailed. Zeigler told Jones he could start his publicity campaign. Jones did begin the promotion of the event, including advertising, printing and catering arrangements.

On July 18, 1983, Jones was notified by Zeigler that the Myriad would not accommodate the event and a permit would not be issued. No reason was given for the rejection.

On July 28, 1983, counsel for Plaintiff wrote the Office of City Manager requesting that a written contract be issued. On August 2, 1983, Defendant Johnson without giving any reasons confirmed that the permit would not be issued.

Defendant Johnson testified that rental of public facilities such as the Myriad is done by permit issued by Defendant OCPPA. Meetings of the OCPPA are not held to approve use. Defendant Johnson regularly grants or denies such permits and he made the ultimate decision to not issue a permit to Plaintiff. He made his decision on the information that the event was to be a national contest for female impersonators entitled the "Miss Gay America Pageant." He did not investigate further into the nature of the event and discussed his decision only with legal counsel. He did not hold a hearing in order to determine the content of the event. Defendant Johnson testified he thought the event to be an open expression of homosexuality which he believed violated prevailing community standards. He concluded the event was therefore obscene. Defendant Johnson knew of no printed standards for determining obscenity nor did he rely on any city ordinances in making his decision. He did not know then nor does he know now of any city ordinances prohibiting a man dressing as a woman. Defendant Johnson testified that had a homosexual group wanted to book the Myriad for a closed meeting not open to the public a permit would be issued because such a meeting would not display homosexuality to the public in a public place.

Jones testified that the pageant would have 50 contestants from 23 states and that contestants are selected in preliminary competitions throughout the year. Contestants are judged in several categories and compete in female attire in a talent competition, evening gowns and sportswear. The event is to be open to the public. Jones testified the competition is based on the way a person transforms himself through the "art of illusion" to look like a woman.

■  The Supreme Court, in *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95

S.Ct. 1239, 43 L.Ed.2d 448 (1975) set forth the definitive standards by which a city may refuse the use of a public forum without violating First Amendment rights of expression. In that case, the directors of a municipally-owned theater in Chattanooga, Tennessee, refused a permit to a promoter who wished to present a production of the musical "Hair." The directors based their refusal on their judgment of the musical's content, acting on information from "outside reports" without reading the script or libretto. The directors refused a permit because the musical was "not in the best interest of the community," and not "clean and healthful and culturally uplifting." The production was later found by a jury to be obscene under city ordinances and the laws of Tennessee.

The Supreme Court in *Conrad* did not address the issue of obscenity, finding that the denial of the permit was an unlawful prior restraint on free expression.

Prior restraints on expression come before the courts bearing a heavy presumption against their constitutional validity. The Supreme Court in *Conrad* reiterated the rule that the "presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law; a free society prefers to punish the few who abuse rights of speech after they break the law than to throttle them and all others beforehand. It is always difficult to know in advance what an individual will say, and the line between legitimate and illegitimate speech is often so finely drawn that the risks of freewheeling censorship are formidable." 420 U.S. at 559, 95 S.Ct. at 1246.

█ Only where a system of prior restraint takes place under procedural safeguards designed to obviate the dangers of a censorship system does such prior restraint avoid Constitutional infirmity. *Freedman v. Maryland,* 380 U.S. 51, 58, 85 S.Ct. 734, 739, 13 L.Ed.2d 649 (1965). The Supreme Court in *Conrad* reaffirmed the requirements of such a system of prior restraint:

*First,* the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor. *Second,* any restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo. *Third,* a prompt final judicial determination must be assured. 420 U.S. at 560, 95 S.Ct. at 1247.

█ In the case at bar, the Court finds that the Myriad Convention Center is a public forum. *Southeastern Promotions, Ltd. v. Oklahoma City, Oklahoma,* 459 F.2d 282, 283 (10th Cir.1972). As a public forum, the Myriad is designed for and dedicated to expressive activities and therefore subject to the strictures of the First Amendment.

Defendants contend the "Miss Gay America Pageant" is not accorded Constitutional protection because it is a commercial enterprise and not a noteworthy artistic endeavor such as a play or musical. Defendants contend that a blatant showing of men parading in women's apparel is not artistic.

█ Such a judgment is subjective. While this Court may agree that such a "pageant" may not rise to the level of artistic endeavor that "Hair" or "La Cage aux Folles" represent, it is still expression. Defendants have failed to produce evidence, authority or argument that evaluations of the degree of "art" in entertainment make a difference in the extent of constitutional protection. The First Amendment is not an art critic. Plaintiff's production includes a talent competition with singing and dance, expression which the Supreme Court cited in *Conrad* as protected. Any inequality in aesthetic value between Plaintiff's pageant and a musical or play is a distinction without a difference.

█ Defendants next contend the "pageant" is obscene and therefore unprotected by the First Amendment. Obscene material is unprotected by the First Amendment. *Kois v. Wisconsin,* 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972); *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). In determining what is obscene material, the basic guide-

lines for the trier of fact must be: (a) whether the "average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work as a whole, lacks serious literary, artistic, political, or scientific value. *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 (1973).

■ While Plaintiff's pageant arguably may fall within the terms of standards (a) and (c) above, Defendants have not produced a shred of evidence that the pageant includes depictions of sexual conduct in violation of state law. Defendants conceded at the hearing of this cause that they had no evidence that contestants would engage in lewd exposure of the body in violation of 21 O.S. § 1021 or 11 O.S. § 22–110. Defendants have no evidence that contestants will engage in depiction of sexual conduct in violation of 21 O.S. 886. Defendants merely argue that the exposure of a male in female attire is immoral. There are no state laws prohibiting a man dressing as a woman. Defendants have not satisfied their burden of showing the production to be obscene. Inasmuch as Defendants have not produced evidence of obscenity, this Court declines to find Plaintiff's production legally obscene.

■ Whether the pageant is an open expression of homosexuality is irrelevant. In view of acclaimed performances by Dustin Hoffman, Julie Andrews, Flip Wilson, Harvey Korman, Tony Curtis and Milton Berle in the roles of female impersonators, such impersonations may not be necessarily equated with homosexuality. In any event, homosexual expression is protected. *Gay Activists Alliance v. Board of Regents of the University of Oklahoma,* 638 P.2d 1116 (Okl.1981). The First Amendment values free and open expression, even if distasteful to the majority, including personally distasteful to this Court. As Voltaire said, "I disapprove of what you say, but I will defend to the death your right to say it."

Particularly disturbing to this Court is Defendants conduct in dealing with Plaintiff's application. Defendants made no effort to follow the clear dictates of the U.S. Supreme Court, even after discussion with legal counsel and even though reminded of the pertinent cases by Plaintiff's counsel in his letter of July 28, 1983. Instead, in the face of clear-cut mandates, Defendant Johnson unilaterally rejected the application without investigation and based only on his own opinion.

Providing wholesome entertainment is an admirable motive, but government officials at all levels must shoulder the responsibility of following the law and upholding the Constitution, even when to do so is unpopular. Based upon the facts before it the Court has no alternative but to grant Plaintiff's motions for preliminary and permanent relief.

Defendants are ordered to rent the Great Hall of the Myriad Convention Center to the Plaintiff at the customary rental rate and on customary terms on September 18, 1983. Plaintiff is awarded attorney's fees and costs of this action against Defendants.