UNITED STATES of America, Plaintiff,

v.

MISCELLANEOUS PORNOGRAPHIC MAGAZINES, PIECES OF PORNO-GRAPHIC AD MATTER WITH HARD CORE ILLUSTRATIONS AND FILMS, Defendant.

YOURSTYLE PUBLISHERS, INC., Plaintiff,

v.

G. William MILLER, Secretary of the Treasury, et al., Defendants.

UNITED STATES of America, Plaintiff,

v.

VARIOUS ARTICLES OF MERCHAN-DISE, SCHEDULE # 125, Defendant.

Nos. 80 C 3593, 80 C 5753 and 80 C 5566.

United States District Court, N. D. Illinois, E. D.

Oct. 13, 1981.

Dan Webb, U. S. Atty., Chicago, Ill., for plaintiff.

Joseph Schuman, Foss, Schuman & Drake, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

These three consolidated actions[1] involve allegedly pornographic material seized in 1980 by the United States Customs Service, Chicago office (the "Customs Office") pursuant to 19 U.S.C. § 1305 ("Section 1305").[2] Under Section 1305 a customs office is authorized to seize and hold "any obscene book" or other written or visual material imported into the United States from any foreign country, pending determination by a United States District Court whether or not the material is obscene. If the court makes an affirmative determination the material is "forfeited"—destroyed by the United States Attorney.[3]

In each of 80 C 3593 and 80 C 5566 the government seeks forfeiture and destruction of an allegedly pornographic Swedish magazine entitled *Revolt* mailed to *Gay-Life*, a Chicago magazine published by YourStyle Publishers, Inc. ("YourStyle"). Additionally 80 C 3593 requests the forfeiture of certain advertising materials (the "ad materials") addressed to Lee Rice ("Rice") in Canon City, Colorado.

As is their right under Section 1305, addressees YourStyle and Rice have filed "claims" contesting the propriety of the respective seizures. Rice claims the seizure process violates his rights "to freedom of speech and . . . education" under the First Amendment. YourStyle submits four affirmative defenses, each alleging a separate constitutional violation by the government in its seizure procedure. YourStyle also asserts that its First Amendment right as a publisher is violated by *any* seizure under

---

1. For convenience each action will be referred to by its case number: 80 C 3593, 80 C 5566 or 80 C 5753.

2. Appendix A to this opinion contains the complete text of Section 1305.

3. Unless specified otherwise all United States governmental entities involved in these actions will be referred to collectively as the "government."

Section 1305. Finally YourStyle has filed its own complaint against the government, 80 C 5753, seeking injunctive and declaratory relief against the same actions challenged as unconstitutional in YourStyle's affirmative defenses in 80 C 3593 and 80 C 5566.

Three motions are currently pending:

(1) the government's motion for a ruling as to obscenity of the materials claimed by Rice;

(2) the government's motion to dismiss YourStyle's affirmative defenses in 80 C 3593 and 80 C 5566 and to dismiss its complaint in 80 C 5753; and

(3) YourStyle's motion for summary judgment in all three actions.

For the reasons stated in this memorandum opinion and order:

(1) the government's motion for a ruling as to obscenity of the "ad materials" is granted;

(2) the government's motion to dismiss YourStyle's affirmative defenses is granted in part and denied in part, while its motion to dismiss the complaint in 80 C 5753 is denied; and

(3) YourStyle's summary judgment motion is denied.

*Section 1305 and the Current Seizures*

Section 1305 prohibits "all persons...from importing into the United States...any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation...."[4] It also establishes the procedure for forfeiture and destruction of materials imported in violation of the prohibition:

(1) Customs offices, under the direction of the Department of the Treasury, are delegated the responsibility for apprehending prohibited material. Any customs official discovering any such material is directed to seize the prohibited article and hold it pending "the judgment of the district court."

(2) Upon such seizure the customs office is required to (a) send a letter to the addressee of the material informing him or her of the seizure and of the right "to assent to an administrative forfeiture," and (b) inform the local United States Attorney, "who shall institute proceedings in the district court for the forfeiture, confiscation and destruction of the book or the matter seized."

(3) If the district court determines the material is obscene "it shall be ordered destroyed and shall be destroyed." In that proceeding "any party in interest may upon demand have the facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits."

YourStyle publishes *GayLife* as the leading newspaper "serving the Midwest Lesbian and Gay community." *GayLife* "provides news of developments in the Lesbian and Gay community; news of events concerning homosexuality; and news and features deemed of special interest to the Lesbian and Gay community." To obtain national and international news regarding such matters *GayLife* exchanges subscriptions with "similar" newspapers and magazines outside Chicago. One of those publications is *Revolt*, "a Gay liberation magazine from Sweden" written entirely in Swedish.

Rice is a private citizen. In 1980 he ordered from a Denmark distributor the ad materials, which advertise the sale of erotic literature and films.

In July 1980 customs agents in Chicago seized the copy of *Revolt* addressed to *Gay-Life* and the ad materials addressed to Rice, now the subject of the 80 C 3593 forfeiture complaint. Agents later seized the second copy of *Revolt* addressed to *GayLife*, now the subject of 80 C 5566. In its answers to those actions and in its own Complaint in 80 C 5753 YourStyle asserts that the procedure

---

**4.** Another portion of Section 1305 relates to "any...other article which is obscene or immoral...." YourStyle contends the use of "immoral" as part of the Section 1305 standard renders that provision unconstitutionally vague. However it has elected not to advance that argument in the context of the pending motions.

used to confiscate the copies of *Revolt* is constitutionally deficient in five respects: [5]

(1) Customs agents seize materials under Section 1305 based on a finding of "probable cause" to believe the materials are obscene. However the Constitution mandates that such seizures be made only upon a finding that the materials *are* obscene.

(2) Foreign language materials are seized before translation of their text. Any publication with "substantial" text (such as *Revolt*) cannot constitutionally be seized without first being translated so that the evaluation mandated by *Miller v. California*, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973)—assessing the work "as a whole"—can be made.

(3) Materials seized under Section 1305 are in practice usually subjected in the district court to default proceedings under Fed.R.Civ.P. ("Rule") 55.[6] No determination on the merits (as to obscenity of the materials) is ever made. Destruction of the materials in the absence of a judicial determination of obscenity is unconstitutional.

(4) Those factors cumulatively result in a grossly unconstitutional censorship system.

(5) Because YourStyle is a publisher, Section 1305 unconstitutionally interferes with its First Amendment right to gather news. Moreover "source materials" obtained by a newspaper must be considered non-obscene *per se*, at least for the newspaper's purposes, under *Miller.*

1. *"Probable Cause Review" by Customs Agents*

■ YourStyle first contends the seizure standard employed by customs officials un-

der Section 1305 is unconstitutional, claiming that:

(1) Seizures are made when an agent determines there is "probable cause" to believe the material is obscene.

(2) Under the Constitution a more definitive determination—that the materials *are* obscene—is required.

YourStyle's assertion that "probable cause" is the operative standard is based solely on the government's response to YourStyle's first Request For Admissions (the "response"):

1. REQUEST: Defendants have authorized, allowed, and effectuated the customs seizure of foreign language material on the basis of its alleged obscenity without preparation of an English-language translation of that material.

RESPONSE: Defendants neither admit nor deny this request because the United States Customs Service does not make a finding of obscenity. Instead, it concludes that there is reason to believe that the material may be obscene.

Whether a probable-cause seizure would be constitutionally permissible (an intriguing and difficult legal question) need not be addressed here, for YourStyle's interpretation of the response does not comport with the facts. Procedures employed in determining whether or not to seize a publication are described in the affidavit of Customs Service Mail Administrator Royce Scott ("Scott"), who states that customs agents *do* determine whether the publication is obscene, applying the *Miller* standard.

YourStyle's factual dispute with the Scott affidavit is based solely on the locu-

**5.** Rice's *pro se* answer to the Complaint in 80 C 3593 alleges without elaboration that the seizure process violates his First Amendment rights. His submission in response to the government's motion for a ruling on obscenity of the ad materials was no more illuminating. Accordingly Rice's claim will not be discussed separately in this opinion. Instead it will be assumed that he wishes to adopt YourStyle's exhaustive constitutional attack on the procedure.

**6.** YourStyle refers to the fact, confirmed by this Court's own experience, that in the great majority of forfeiture cases no appearance is made by any claimant. That is however very different from characterizing the proceedings as going by "default"—certainly in this Court. See discussion in *United States v. Various Articles of Obscene Merchandise, Schedule No. 1769*, 600 F.2d 394, 398–400 (2d Cir. 1979) ("*Schedule No. 1769*").

tion of the response. But the affidavit is much more detailed than the response. In light of its representations and the government's other submissions in these actions, YourStyle's suggested construction of the response is simply inaccurate.[7] Customs agents plainly do reach a conclusion as to the obscenity of scrutinized items. Indeed the response accurately reflects recognition of the customs agents' role as a pre-screening device for the court in the ultimate determination of obscenity. Only the court, in the words of the response, "make[s] a finding of obscenity." Again in the words of the response, when the customs agent "concludes that there is reason to believe that the material may be obscene," he or she is deciding that based on his or her examination—and the determination that the *Miller* standard has been satisfied— there is "reason [or probable cause] to believe" the district court will reach the same conclusion.

In summary YourStyle's factual contention rests on a dubious interpretation of the government's ambiguous response. Scott's affidavit compels a different and more persuasive reading: Agents employ the *Miller* test in determining whether matter is obscene. When they reach an affirmative conclusion on that score they have "probable cause" to believe the district court will so rule as well. That explanation of the response is wholly unrefuted by YourStyle, and its first constitutional objection cannot prevail.

### 2. Seizure of Allegedly Obscene Materials Without Translation

YourStyle's second constitutional argument rests on sounder grounds. It claims that in determining whether *Revolt* is obscene the government has effectively failed to apply the prevailing constitutional standard expressed in *Miller*, 413 U.S. at 24, 93 S.Ct. at 2614 (emphasis added):

**7.** To the extent that "probable cause" is necessarily the standard employed in determining whether *untranslated* material is obscene, YourStyle's argument is addressed in the next section of this opinion.

The basic guidelines for the trier of fact [in determining obscenity] must be: (a) whether "the average person, applying contemporary community standards" would find that the work, *taken as a whole*, appeals to the prurient interest. . . (b) whether the work depicts or describes, in a patently offensive way, sexual conduct. . . and (c) whether the work, *taken as a whole*, lacks serious literary, artistic, political, or scientific value.

Each of the seized issues of *Revolt* was some 80 pages long. YourStyle claims and the government does not dispute that only 10% of the total "page area" comprised pictures, only one-half of which (5% of the "page area") could arguably be considered obscene if viewed in isolation. *Revolt*'s text, the remaining 90% of the "page area," is entirely in Swedish. YourStyle urges that it is patently impossible, consistent with the *Miller* mandate that the work be evaluated *as a whole*, for a customs agent to determine whether an untranslated copy of *Revolt* is obscene. Of course no translation of *Revolt* was made before the seizures.

*Kois v. Wisconsin*, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972) is particularly relevant here. When *Kois* was decided *Roth v. United States*, 354 U.S. 476, 489, 77 S.Ct. 1304, 1311, 1 L.Ed.2d 1498 (1957) represented the applicable obscenity standard. Under *Roth* material could be considered obscene when (emphasis added):

to the average person, applying contemporary community standards, the dominant theme of the material *taken as a whole* appeals to the prurient interest.[8]

Relying in part on *Roth*'s "taken as a whole" language, *Kois* held that two pictures of nude persons accompanying an article in an underground newspaper about police confiscation of such pictures did not render the newspaper issue obscene (408 U.S. at 230–31, 92 S.Ct. at 2246):

**8.** Though *Roth* has been overtaken by *Miller*, the "taken as a whole" requirement survives in the statement of, and thus in applying, the newer *Miller* standard.

We do not think it can be fairly said, either considering the article as it appears or the record before the state court, that the article was a mere vehicle for the publication of the pictures. A quotation from Voltaire in the flyleaf of a book will not constitutionally redeem an otherwise obscene publication, but if these pictures were indeed similar to the one seized . . . they are relevant to the theme of the article. We find it unnecessary to consider whether the State could constitutionally prohibit the dissemination of the pictures by themselves, because in the context in which they appeared in the newspaper they were rationally related to an article that itself was clearly entitled to the protection of the Fourteenth Amendment.

■ *Kois'* mandate to the trier of fact is clear: Where arguably obscene pictures might "rationally relate" to the protected text, obscenity *vel non* can be determined only in terms of the work as a whole. Illustrations obscene if viewed in isolation may not be obscene in the context of an accompanying text. And precisely because text can "save" illustrations, it follows that a foreign text must be translated before deciding the obscenity of the work embodying those pictures and text.[9]

That conclusion alone does not entitle YourStyle to relief. At least two issues related to "translation" remain:

(a) Does the *Kois* principle apply to the customs service's preliminary "screening" of material for judicial review?

(b) If it does, what standard must be used to decide when translation is required before confiscation?

(a) *Applicability of* Kois *to customs office confiscations under Section 1305.*

■ YourStyle need not invoke constitutional principles to demonstrate that a customs office must translate *Kois*-type materials. Section 1305 itself requires a customs official to seize "any such [that is, *obscene*] book or matter." To comply with that duty the official must make a preliminary determination that the book or matter *is* obscene, even though *adjudication* of obscenity is solely within the power of the district court. That determination of course requires *the agent* to apply the relevant guiding principles—necessarily including *Kois.*

According to the Scott affidavit, Customs Office practices generally comport with that requirement. Agents do seek to apply the *Miller* test in determining whether to confiscate material under Section 1305. But the officials are simply untrue to *Miller* when they fail first to translate text that might (under *Kois*) render an item "taken as a whole" unconfiscable.

■ In reply the government argues that the burden of such translations on the Customs Office (1) would be enormous and therefore (2) could not have been intended by Section 1305. On the latter issue the text and history of Section 1305 neither specifically contemplate nor reject any translation requirement. Section 1305 plainly *does* however contemplate a non-adjudicatory determination of obscenity by customs officials. In this Court's view such a determination necessarily requires translation in *Kois*-type situations. As for the first consideration—the scope of the Customs Office's burden—two points may be made:

(1) Administrative convenience cannot outweigh First Amendment rights. Any

---

**9.** This Court of course recognizes that many persons might import "dirt for dirt's sake"—they might be interested only in obscene pictures and care nothing for the existence or content of any accompanying text. For such persons text is plainly irrelevant, and the illustrations are effectively the "whole" work. Given YourStyle's use of *Revolt* as a source of world homosexual news, that hypothesis obviously does not apply here. Moreover if that possibility were permitted to dictate the legal

rule, it would bar *all* importation of non-obscene *Kois*-type literature (in English as well as in foreign languages), a result plainly at odds with the First Amendment. Indeed, related considerations contributed to adoption of the "average person, applying contemporary community standards" test in *Roth* and *Miller*, instead of gearing obscenity determinations to the most susceptible members of society. See the discussion in *Schedule No. 1769*, 600 F.2d at 400–07.

argument based on burden proves too much, for carried to its logical conclusion it would eliminate the "burden" of the adjudicatory hearing as well, permitting destruction on the official's judgment alone.

(2) Imposing the added burden on the customs officials will lessen the burden on the district courts. Any item determined not to be obscene after translation will be returned to the stream of commerce rather than forwarded to the court for adjudication. Thus the court (which must be faithful to *Kois*) will avoid the need itself to obtain and examine a translation of the material at issue.

To the extent that the administrative burden is a legitimate concern, it may be tempered by the discussion in the next section of this opinion.

(b) *Customs office determinations as to when translation must precede confiscation.*

*Kois* need not mandate translation of *all* foreign language text accompanying arguably obscene photographs ("A quotation from Voltaire on the flyleaf of a book will not constitutionally redeem an otherwise obscene publication. . . ."). It may be satisfied by requiring translation wherever text is of a sufficient magnitude that it might reasonably "save" otherwise confiscable illustration. "Sufficient" text, like other concepts in this area of the law,[10] is inherently incapable of precise definition. YourStyle proposes that translation be required of material that "includes significant amounts of text." Such a criterion would fail to recognize that illustrations—some arguably more obscene than others—might perhaps be salvageable by varying amounts of text. One work's "substantial" text

might enable it to escape the "presumption" of obscenity its illustrations create, while another work—because of the difference in the nature of its illustrations—would require more or less text to offset that presumption.[11]

In this area of necessarily unsatisfactory alternatives it seems that reference to the language of *Kois* (though itself nebulous) is the best course. Translation of foreign text should be required where such text is of sufficient length that it (1) might reasonably constitute more than "a mere vehicle for the publication" of otherwise obscene pictures and (2) could embrace a story or article of sufficient substance so that the work "as a whole" might be "protected" under the Constitution. If after examining the illustrations and length of text a customs official determines that the text could not render the work non-obscene under that *Kois* standard, seizure under Section 1305 may be invoked without a translation. If he or she determines to the contrary, a translation and subsequent administrative determination of obscenity is required before Section 1305 forfeiture proceedings may be commenced.

3. *Alleged "Default" Proceedings Under Section 1305*

YourStyle next asserts that after customs officials seize materials and initiate a Section 1305 judicial proceeding, courts as a matter of course consider the government's complaint for forfeiture as a motion for default judgment under Rule 55. From that premise YourStyle argues that materials are destroyed without the Court ruling on the merits—determining whether the materials are obscene—in violation of Sec-

---

**10.** Few discussions in the field of obscenity (including this one) can seem to resist quoting Justice Stewart's famous concurring statement in *Jacobellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964):

I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description [of pornography under *Roth*]; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it. . . .

**11.** Of course content rather than quantity of text is the relevant factor. But content of a foreign text cannot be known until it is translated. As a working rule to determine at the threshold whether illustrations could be "saved" by text, a customs agent could reasonably assume a rough correlation between quantity of text and the likelihood the requisite content is present.

tion 1305 and the Constitution; *see, Schedule No. 1769*, 600 F.2d at 398–400. YourStyle seeks an injunction, apparently to require the government officially to inform the district courts with whom forfeiture complaints are filed that an adjudication on the merits is required.

Obvious standing and case or controversy problems that defeat YourStyle's claim need not be discussed in any detail here. It rests on a factual assumption, advanced without support, of judicial abdication of the judging responsibility. This Court's disposition of forfeiture actions under Section 1305, whether or not a claimant has come forward, has *always* involved a "consideration of the merits." YourStyle's assertion that a contrary practice is prevalent is uncorroborated and vigorously disputed by the government. More important in terms of justiciability, YourStyle cites no instances in which the alleged practice has affected it and does not seek to represent any persons who could properly make such a claim. Finally YourStyle alleges no wrongdoing on the government's part other than possibly the filing of inappropriate lawsuits. It is judicial disposition of cases as to which YourStyle seeks relief. There is of course no place in this lawsuit for redress of that nature. Accordingly YourStyle's third constitutional objection to the Section 1305 process affords no basis for relief.

### 4. *Cumulative Effect of Allegedly Constitutionally Deficient Procedures*

YourStyle next contends that the entire Section 1305 procedure is so infected with deficiencies as to be cumulatively inadequate under the First Amendment. It relies in part on the specific "defects" discussed in parts 1–3 of this opinion and in part on the more general nature of the "censorship process" Section 1305 facilitates.

All YourStyle's specific contentions have already been addressed by the Court. As

for YourStyle's more general attack on the Section 1305 procedure, the controlling Supreme Court decisions leave no room for doubt that Section 1305 is a permissible censorship scheme. *United States v. 12 200-Ft. Reels of Super 8MM. Film*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973); *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); *see also, Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

### 5. *Press Rights To Gather News*

YourStyle finally asserts that its status as a newspaper publisher [12] entitles it to special immunity from Section 1305 seizures under two theories:

(1) Because YourStyle seeks to obtain copies of *Revolt* to be used in conjunction with its publication of *GayLife*, the seizure is an unconstitutional interference with its "effort to gather news."

(2) "A source relied on by a newspaper in the *bona fide* collection of news is *per se* non-obscene" under *Miller*, for it necessarily possesses "serious literary, artistic, political, or scientific value."

*Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), squarely refutes the first of those theories. In *Pell* the Court held (*id.* at 833–34, 94 S.Ct. at 2809–10) that although the First Amendment protects the press' rights to "seek out sources of information not available to members of the general public," it does not "impose upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally." YourStyle has offered no legal or factual arguments distinguishing *Pell* in this context.

YourStyle's second claimed "freedom of the press" theory is also without merit. It effectively urges the Court to adopt one of two positions:

(1) Obscenity is to be determined for all purposes by reference to a newspaper's use for materials.

---

12. This claim is obviously inapplicable to Rice, as was YourStyle's contention as to translation of foreign texts. For the reasons already stated, then, no constitutional deficiency has been shown that might encompass Rice's attack on the Section 1305 process. Accordingly government's motion for a ruling on the issue of obscenity as to the Rice claim is granted.

(2) Obscenity is to be determined under one standard for the press and another for the public.

Neither contention finds support in controlling law. *Miller* expressly looked to "the average person, applying contemporary community standards" as the first component of the obscenity test, to whether the work offensively depicts sexual conduct as the second, and to whether the work itself, *not the use it is put to by a particular consumer*, "lacks serious literary, artistic, political, or scientific value" as the third. That formulation leaves no room for assessing obscenity in the manner YourStyle urges.[13]

### YourStyle's Requested Relief

YourStyle's exhaustive attack on Section 1305 procedures has revealed one *potential* legal defect: the government's failure to translate the magazines' text before seizure. But whether translation was indeed required under *Kois* can be determined only by examination of the seized materials. That examination is an administrative responsibility under the analysis in Section 2 of this opinion. Accordingly the government will be required forthwith to proceed in accordance with Section 2 and to report to the Court at the next status date for these actions.

### Conclusion

As to the Rice claim the government's motion for a ruling on the issue of obscenity is granted, and the government is directed to deliver the ad materials to the Court forthwith for that purpose. All of YourStyle's affirmative defenses are dismissed except those numbered Paragraph IV (Second Affirmative Defense) in YourStyle's Claim and Answer filed in 80 C 3593 and 80 C 5566. Both the government's motion to dismiss the complaint and YourStyle's motion for summary judgment in 80 C 5753 are denied. These actions are set for a status hearing at 9 a. m. October 26, 1981, at which time the government shall report on its compliance with Section 2 of this opinion.

### APPENDIX A

### § 1305. Immoral articles; importation prohibited

#### Prohibition of importation

(a) All persons are prohibited from importing into the United States from any foreign country any book, pamphlet, paper, writing, advertisement, circular, print, picture, or drawing containing any matter advocating or urging treason or insurrection against the United States, or forcible resistance to any law of the United States, or containing any threat to take the life of or inflict bodily harm upon any person in the United States, or any obscene book, pamphlet, paper, writing, advertisement, circular, print, picture, drawing, or other representation, figure, or image on or of paper or other material, or any cast, instrument, or other article which is obscene or immoral, or any drug or medicine or any article whatever for causing unlawful abortion, or any lottery ticket, or any printed paper that may be used as a lottery ticket, or any advertisement of any lottery. No such articles whether imported separately or contained in packages with other goods entitled to entry, shall be admitted to entry; and all such articles and, unless it appears to the satisfaction of the appropriate customs officer that the obscene or other prohibited articles contained in the package were inclosed therein without the knowledge or consent of the importer, owner, agent, or consignee, the entire contents of the package in which such articles are contained, shall be subject to seizure and forfeiture as hereinafter provided: *Provided,* That the drugs hereinbefore mentioned, when imported in bulk and not put up for any of the purposes hereinbefore specified, are excepted from the operation of this

---

**13.** There is a level of irony in this last argument by YourStyle. Most often the personalized, non-objective test for obscenity is advanced by

the censor, as in seeking to protect children and allegedly susceptible adults; see n.9.

subdivision: *Provided further,* That the Secretary of the Treasury may, in his discretion, admit the so-called classics or books of recognized and established literary or scientific merit, but may, in his discretion, admit such classics or books only when imported for noncommercial purposes.

Upon the appearance of any such book or matter at any customs office, the same shall be seized and held by the appropriate customs officer to await the judgment of the district court as hereinafter provided; and no protest shall be taken to the United States Customs Court from the decision of such customs officer. Upon the seizure of such book or matter such customs officer shall transmit information thereof to the United States attorney of the district in which is situated the office at which such seizure has taken place, who shall institute proceedings in the district court for the forfeiture, confiscation, and destruction of the book or matter seized. Upon the adjudication that such book or matter thus seized is of the character the entry of which is by this section prohibited, it shall be ordered destroyed and shall be destroyed. Upon adjudication that such book or matter thus seized is not of the character the entry of which is by this section prohibited, it shall not be excluded from entry under the provisions of this section.

In any such proceeding any party in interest may upon demand have the facts at issue determined by a jury and any party may have an appeal or the right of review as in the case of ordinary actions or suits.