UNITED STATES of America, Plaintiff,

v.

OBSCENE PRINTED MATTER, SEIZURE NO. 87–041700192, Defendant.

Civ. A. No. 87–0918WF.

United States District Court, D. Massachusetts.

June 16, 1987.

---

Robert Mueller, Evan Slavitt, Asst. U.S. Attys., Boston, Mass., for plaintiff.

Glenn D. Powell, pro se.

### OPINION AND ORDER *

WOLF, District Judge.

As I said when we were here on June 11th, in view of the time deadlines imposed on courts to determine whether disputed items are obscene when they are seized under 19 U.S.C. Section 1305, I'm going to render this opinion orally rather than take the longer time necessary to write a more polished expression of this decision. This does not, however, reflect at all that I or anybody else involved in this has taken this case casually.

With the assistance of my able clerk, Mr. Kafker, I have done extensive research. In addition, the United States filed a memorandum and Mr. Slavitt made a fine argument on June 11th. Mr. Powell, although proceeding *pro se*, has in my view gone right to the heart of many of the most interesting points presented by this motion, and ably represented his interests, at least with regard to the principal and indeed sole issue; that is, whether the government has proven the magazine in question to be obscene. I, therefore, am in a position to render an informed judgment at this time, and will do so.

For the reasons that I will describe, the United States' motion to adjudicate the magazine Cain obscene and to authorize its destruction is hereby allowed. The order authorizing destruction, however, is hereby stayed for 31 days to permit Mr. Powell to

---

* This order has been edited slightly for publication.

take an appeal or pursue any other legal remedies he perceives to be available to him. If an appeal is taken, a further stay for the appeal will need to be obtained from the Court of Appeals.

The findings of fact and conclusions of law on which this decision is based are as follows. The magazine Cain, which is Exhibit 1 in these proceedings, was seized from Mr. Powell by officers of the United States Customs Service as he re-entered the United States on March 31, 1987. On April 13, 1987, the United States Attorney filed a complaint for forfeiture under 19 U.S.C. Section 1305. On April 21, 1987, Mr. Powell was served with the complaint. On April 30, 1987, Mr. Powell filed a letter opposing forfeiture. On May 7, 1987, the United States moved for an adjudication of obscenity and destruction of the magazine. On June 2nd or 3rd, the parties were informed by the clerk of this court that the hearing on this case would be started on June 5, 1987. Mr. Powell requested a continuance for about a week because of the business responsibilities he had scheduled on June 5th, and because of his desire to have more time to consult an attorney and to prepare his defense. The Court in response granted the continuance until June 11th.

The Court also gave the parties to June 9 to submit briefs or other filings. The government filed a memorandum. The defendant filed a letter expressing his position. I should say more accurately, Mr. Powell filed the letter. He is not a defendant. There was no request for a jury trial made, so it is incumbent upon the Court to decide the facts as well as the applicable law.

On June 11th, an evidentiary proceeding constituting the trial in this action was held for about two hours. The parties had the opportunity to present the evidence and arguments they wished to present.

■ The law as expressed by the United States Supreme Court in *United States v. 37 Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), requires that this court decide whether disputed matter is obscene within 60 days of the filing a complaint or a longer time if that additional period was caused by the conduct of the party opposing forfeiture. In this case it was stipulated on June 11th that the Court would have up to an additional seven days to decide this matter because Mr. Powell's request for a continuance caused the delay in the commencement of the hearings. Recognizing that, I deferred rendering this decision from June 12th at 4 p.m. when it was originally scheduled to today so the parties would have a chance to consider, decide, and inform the Court whether it would be necessary to decide this case formally, as it has become essential to do. I find that the time requirements established by the Supreme Court in *United States v. 37 Photographs* have been met by the United States, and are today being satisfied by the Court.

The magazine at issue is a March 1987 edition of Cain. The evidence shows that it is a Swedish magazine and to the extent that there is text, it is Swedish text. The magazine consists largely of pictures of naked women displaying their genitals. There are certain pages that have particularly been focused upon in these proceedings. I will describe them briefly; however, they speak eloquently for themselves. Those pages include, but are not limited to, page 30, which has a two-word caption and consists of six photographs which are not accompanied by any text other than the caption and which depict a male and female engaged in intercourse, fellatio, and perhaps in anal intercourse.

Also the subject of attention in these proceedings is the four unnumbered pages captioned Champagne Sex, which has a few paragraphs of Swedish text but consists predominantly of pictures depicting fellatio, cunnilingus and intercourse. Other pages of particular importance to this decision include page 54, which under some Swedish text shows, among other things, a male ejaculating and under other Swedish text shows what appears to be a transvestite exposing himself. Under other text it shows a male and female engaged in intercourse on page 56. The following pages are similar.

The magazine also includes some articles and pictures of such things as bike racing and automobile racing. These are a very minor portion of the publication. There are also a number of ads for erotic films, sex aids and similar matters.

In deciding this case I recognize that the burden of proving that the publication is obscene is on the United States. The *United States v. 2200 Paperback Books,* 565 F.2d 566, (9th Cir.1977) is one of the authorities establishing or recognizing that the burden of proof is on the United States.

Obscenity for the purposes of this case is defined by the United States Supreme Court's decision in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). In *Miller,* the Supreme Court said, "The basic guidelines for the trier of fact must be, (a) whether the average person applying contemporary community standards will find that the work taken as a whole appeals to the prurient interest; (b) whether the work depicts or describes in a patently offensive way sexual conduct specifically defined by the applicable state law; and, (c) whether the work taken as a whole lacks serious literary, artistic, political or scientific value." *Id.* at 24, 93 S.Ct. at 2615.

In *Miller,* the Supreme Court also gave what it characterized as a few plain examples of what could, under part B, be prohibited by a constitutional state statute. The examples which were not intended to be exhaustive were "(a), patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated; (b), patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals."

The government is required to bear its burden of proof with regard to all three prongs of the *Miller* test in order to demonstrate that the publication is obscene. I find that it has borne its burden on all three prongs of the *Miller* test.

In reaching this decision, I recognize that the first and second prongs of the *Miller* test—that is, appeal to prurient interest and patent offensiveness—are to be decided with reference to contemporary community standards. With regard to the third prong—that is, whether the work taken as a whole has serious value—the question is whether a reasonable person would find the material to have such value, not whether the ordinary person in the community would. This is a point that has been clarified recently by the Supreme Court in *Pope v. Illinois,* —— U.S. ——, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

In reaching this conclusion I have also recognized that in applying the *Miller* test, the judgment on each element is not to be made on the basis of personal opinion or by the effect of the material on a particularly sensitive or insensitive person or group. Rather the United States Supreme Court has instructed in *Hamling v. U.S.,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) that the trier of fact is to draw on his own knowledge of the views of the average person in the community from which he comes in making the required determination.

■ Expert opinion is not normally required in obscenity cases such as this one because the trier of fact is familiar with the sensitivity of the average person in the community. *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). The government and the Court may rely on the magazine in this case itself.

At the hearing on June 11, I invited the United States to present expert testimony. I said at that time that at the conclusion of the case there might conceivably be a close question regarding community standards as applied to this magazine. I also said that it might turn out that I might feel that I was not sufficiently familiar with community standards or sufficiently persuaded that they would operate to find with regard to prongs A and B this magazine obscene, and the government—by failing to produce expert testimony—might run the risk that I would find it did not bear its burden of proof. No expert testimony was offered, I find now that none was needed.

■ After rereading the magazine, after hearing argument, after reflecting on my knowledge of the standards of this community, I feel comfortable in concluding that I have adequate knowledge of contemporary community standards to decide this particular case, and the government has satisfied its burden of proof in demonstrating that this magazine is obscene.

With regard to the first prong of the *Miller* test, I find that taken as a whole, the average person applying contemporary community standards would find that Cain appeals to the prurient interests. Prurience has been defined by the Supreme Court in *Brockett v. Spokane Arcades*, 472 U.S. 491, 105 S.Ct. 2794, 2802, 86 L.Ed.2d 394 (1985) and *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). The Supreme Court has defined prurience as that which appeals to a shameful or morbid interest in sex.

I find that the average person taking the magazine as a whole would find that it appeals to a shameful interest in sex. Most of the magazine is aimed at arousing a sexual response. At least the many parts of it that invite the reader to observe close up and unadorned intercourse, fellatio, cunnilingus and ejaculation would be viewed by the average person in this community to appeal to a shameful interest in sex. These parts are not isolated examples in what would otherwise be an unobjectionable magazine. They characterize or epitomize the magazine. Thus, taken as a whole, the average person applying contemporary community standards would, in my view, find that this magazine appeals to the prurient interest.

With regard to the second prong of the *Miller* test, I find that the average person applying contemporary community standards would find that this work depicts in a patently offensive way sexual conduct specifically defined by the applicable state law. The applicable state law in this case is Massachusetts General Law, Chapter 272, Section 31. It defines obscenity largely in terms of the *Miller* test. It goes on and describes sexual conduct to include, among a number of other things, intercourse, touching of genitals, and lewd exhibitions of the genitals. The examples described by the Supreme Court in *Miller*, which I read earlier, make clear that patently offensive depictions of such acts may be obscene. Not all representations of such acts are necessarily obscene. They may be, however, if they are patently offensive. Contrary to Mr. Powell's contentions, as a matter of law, obscenity does not require involvement of children, animals or violence. The fact that there may be other forms of obscenity more offensive to the community than the obscenity I find here, does not mean that this work is not obscene.

With regard to patently offensive, and its meaning, I have found the most extensive review and discussion to be in *U.S. v. Various Articles of Obscene Merchandise*, 600 F.2d, 394, 403 (2d Cir.1979). Like the Second Circuit, I accept the dictionary definition of patently as meaning clearly or obviously or plainly. I have also considered the legal characterizations of patently offensive. It is expressed in various Supreme Court decisions. These include Justice Harlan's characterization of patently offensive as meaning "so offensive on its face as to affront current community standards of decency." That is found in *Manual Enterprises v. Day*, 370 U.S. 478, 482, 82 S.Ct. 1432, 1434, 8 L.Ed.2d 639 (1962).

I have also considered, among the other guidance provided by the Supreme Court, Justice Brennan's reference to patently offensive as "substantially beyond customary limits of candor in description or representation of sexual matters." That was an expression used by Justice Brennan in *Jacobellis v. Ohio*, 378 U.S. 184, 191, 84 S.Ct. 1676, 1680, 12 L.Ed.2d 793 (1964).

Applying these standards, I find that the average person applying contemporary community standards would find at least many parts of this magazine patently offensive. Close-ups of intercourse, cunnilingus fellatio, ejaculation and a transvestite exposed are prominent examples of patently offensive parts of this magazine. The pictures depicting the acts I've just described are the primary, if not sole, focus with regard to Page 30; and the Cham-

pagne Sex article pictures are not incidental to any story or distraction. They are close-up and focused depictions of those acts. Their close-up, focused nature, the Supreme Court implied at least in *Jenkins v. Georgia*, 418 U.S. 153, 161, 94 S.Ct. 2750, 2755, 41 L.Ed.2d 642 (1974), is relevant.

With regard to the third prong of the *Miller* test, I find that a reasonable person taking the magazine as a whole will find it lacks serious literary, artistic, political or scientific value. The magazine consists primarily of pictures. It has relatively little text; the most offensive parts have no text or very little text. That text is in Swedish. The evidence indicated that the person Mr. Powell was bringing it in to give to could not read the Swedish. In addition, a reasonable person in the U.S. would not be able to read the Swedish and would focus on the pictures. I've considered, however, whether I should require the text to be translated before deciding the case. For the reasons I'll describe, I have concluded that that is neither necessary nor appropriate. The First Circuit has indicated that the finder of fact is not compelled to regard illustrations as controlled by the text. In *Flying Eagle Publications Inc. v. U.S.*, 285 F.2d 307, 308 (1st Cir.1961), Judge Aldrich wrote, "An obscene picture of a Roman orgy would be no less so because accompanied by an account of a Sunday school picnic which omitted the offensive details."

The government, however, has not urged this view in this case. It has taken the position, in effect, that it is obvious that the text in this case, even if translated, could not save the publication from being patently offensive and otherwise obscene. This, at least implicitly, recognizes the Supreme Court's holding in *Kois v. Wisconsin*, 408 U.S. 229, 92 S.Ct. 2245, 33 L.Ed.2d 312 (1972) which found that pictures rationally related to constitutionally-protected text would not be subject to destruction under Section 1305. In a case raising questions with regard to possible translation similar to this one, Judge Shadur decided in *U.S. v. Miscellaneous Pornographic Magazines*, 526 F.Supp. 460 (N.D.Ill.1981) that *Kois* would operate with regard to a Swed-

ish magazine like this one to require the government to obtain a translation only where there is text of sufficient length that it might reasonably constitute more than a mere vehicle for publication of otherwise obscene pictures and could embrace a story of sufficient substance so that the work as a whole might be protected under the Constitution. I believe that is an appropriate formulation of the legally required test.

■ I find, however, that this is not a case in which translation is required to reach an appropriately informed decision. If this were a possibly close question concerning obscenity, I would require a translation. It is evident to me, however, looking at the magazine as a whole, that the nature and the amount of the text here could not save Cain from being found obscene. The text here could not constitute more than a vehicle or pretext to publish pornographic pictures in the United States.

■ Mr. Powell has argued that this case involves only one magazine being brought in by him for the private use of a friend. It would not be sold or disclosed to children or forced on anyone who didn't want to see it. I accept each of those statements as true. As I observed at the hearing last week, the law does provide that mere private possession of obscene materials in the home may not be criminalized. *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). The Supreme Court has also plainly held that importing obscene matter for the importer's private personal use is constitutionally, and properly prohibited by 19 United States Code, Section 1305(a). *U.S. v. 12 200 Foot Reels of 8 Millimeter Film*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973). In addition, the Supreme Court has also held that the right to possess obscene materials at home does not create the right to give it to others. *U.S. v. 37 Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971). It may, superficially at least, seem illogical to laymen like Mr. Powell to allow private possession of obscene materials in the home but not permit its importation or distribution to others who want it for their

private use. I say "superficially illogical" because you would have to read the Supreme Court's decisions, and not just the annotations in the statute, to understand the distinctions that the Supreme Court makes. And a layman would have to decide for himself whether he finds them persuasive or whether the seeming illogic in the layman's view still obtains. But as Oliver Wendell Holmes, who might not have enjoyed rendering this opinion, once said, "The life of the law is not logic. It is experience." And the law is not ambiguous at all.

The importation of obscene material is properly prohibited as a legal matter by 19 U.S.C. Section 1305, whether or not it is for private use or noncommercial distribution. In this case, the statute has been held constitutional as the government seeks to apply it. The government has borne its burden of proving that the magazine is obscene. Therefore, the government's motion for adjudication of obscenity and for authorization to destroy the magazine has been allowed.

As I said earlier, however, unless there is a compelling objection from the United States, I will stay the order relating to obstruction for 31 days to allow Mr. Powell to appeal this decision if he chooses to do so. Is there anything further for today?

MR. MUELLER: No, your Honor, not from the government's point.

MR. POWELL: No, your Honor.

THE COURT: Court will be in recess.

(Recess taken.)